[No. B104347. Second Dist., Div. Four. Feb. 7, 1997.]

JACK BONSHIRE, Plaintiff and Appellant, v.
ALAN THOMPSON et al., Defendants and Responents.

804

**COUNSEL**

Daniel J. Doonan and Ronald P. Kaplan for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton and Paul F. Rafferty for Defendants and Respondents.

**OPINION**

**EPSTEIN, Acting P. J.**—In this case we hold that when the arbitration clause of a contract specifically prohibits the arbitrator from considering

extrinsic evidence, the arbitrator acts in excess of his or her powers in receiving such evidence, over objection, and using it as a basis for the ensuing award.

Jack Bonshire appeals from a judgment confirming an arbitration award against him. He argues that the trial court should have granted his petition to vacate the award because the arbitrator exceeded his powers in admitting extrinsic evidence in contravention of an integration clause in the underlying contract. We agree that the arbitrator exceeded his powers and reverse.

## FACTUAL AND PROCEDURAL SUMMARY

In August 1994, Alan and Betty Lou Thompson and Jack and Barbara Ludt (Sellers) sold 100 percent of the shares in Viking Refrigeration, Inc., to Jack Bonshire and David Morgan (Buyers). Morgan is not a party to this appeal. The parties executed a form contract, which provided for a purchase price of $90,000. $30,000 was to be paid before the close of escrow, and the remainder was secured by a note for $60,000, with interest, payable over 36 months. Paragraph 2 of the contract provided that the Sellers were to retain the accounts receivable and that all debts were to be paid off.

The contract provided for binding arbitration of "[a]ny dispute or claim in law or equity arising out of this contract or any resulting transaction . . . ," with specified exceptions not relevant here. Paragraph 23 of the form contract is an integration clause with an unusual prohibition against extrinsic evidence: "All prior agreements between the parties are incorporated in this agreement which constitutes the entire contract. Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein *and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this agreement constitutes the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement.*" (Italics added.)

Following the close of escrow, a dispute arose between Buyers and Sellers. Sellers contended that they were entitled to the $90,000 purchase price, plus (1) the $42,850.68 in Viking's bank account at the time of sale (cash in bank), and (2) all payments on the accounts receivable through close of escrow, less payables and expenses, for a total of $73,099.50. Buyers took the position that the total purchase price was $90,000.

Sellers instituted arbitration proceedings pursuant to the contract in September 1995. In their arbitration brief, they argued: "Sellers seek equitable

relief to reform the contract to correctly reflect all of the monetary terms which were agreed upon governing Viking's sale, . . ." They sought $73,099.50, which included the cash in the bank. They also sought attorney fees, and costs.

The factual summary in Sellers' arbitration brief stated that the parties had come to an oral agreement on the terms of sale. Sellers asked a real estate agent, Raoul Guchereau, to prepare any documents necessary to memorialize the agreement. Sellers contended: "Unfortunately, while the Contract and escrow instructions did accurately reflect the $90,000 cash payment and payment of an amount representing all collected accounts receivables (less payables), Guchereau forgot to add that Sellers were also to receive an amount representing the cash in bank which Sellers had not yet withdrawn from Viking and distributed to themselves as income prior to the date of sale. Sellers and Buyers failed to notice that the sale documents excluded this term. To Sellers, the written documents were surplusage; everyone knew and understood the terms of the sale, which could be honored with a handshake just as they had conducted their business for 25 years." The brief explained that Sellers' request for reformation based on unilateral or bilateral mistake was based on this omission. Sellers' arbitration brief attached extensive documents, including checks and correspondence relating to the dispute. In their arbitration brief, Buyers objected to this evidence, arguing that it was inadmissible in light of the contract between the parties.

The arbitrator awarded Sellers damages of $73,099.50 (the exact amount they sought), fees of $29,965, $2,056 in costs, and $8,894 in interest for a total of $111,014.50. The award did not specify how the arbitrator reached the $73,099.50 figure. Buyers petitioned for judicial review of the award and to vacate the award. They argued that the arbitrator had exceeded his powers by reforming the contract to add the term Sellers claimed was omitted. They asserted that the integration clause of the contract precluded the arbitrator from receiving extrinsic evidence of the intent of the parties. The award should be vacated, they argued, under Code of Civil Procedure section 1286.2, which provides an award may be vacated where the arbitrator exceeds his or her powers. (All further statutory references are to this code unless otherwise indicated.)

Sellers responded to Buyers' petition, and sought confirmation of the award. They argued that the arbitrator did not exceed his powers by rendering an award consistent with the evidence presented. They argued that "overwhelming evidence presented at the arbitration . . . established the true understandings of the parties." They said they had presented ample testimonial and documentary evidence from which the arbitrator could conclude that the contract was a mistake because it omitted that Sellers were

entitled to the cash in bank, as orally agreed upon by the parties. Sellers asserted the arbitrator was authorized to receive evidence on that issue and to render an award consistent with that evidence.

At oral argument, counsel for Buyers conceded that the contractual provision for the Sellers' retention of account receivables was subject to the arbitrator's interpretation. But they contended that the integration clause precluded admission of extrinsic evidence as to any other terms not included in the written contract. Counsel for Sellers argued: "The contract was ambiguously drawn as to one of the terms. It was accounts receivable. And another term was missing from the contract. The parties put into evidence at the time of the arbitration that the two terms, one which is ambiguous and one which was missing, was clearly to be part of the contract and that was the understanding of the parties." He went on, "[T]he evidence clearly showed and in fact the person who drafted the contract admitted that he had failed to put that term in. And there was other evidence from the accountant as well that indicated that was to be part of the terms. So we properly asked for and filed for arbitration and for reformation of the contract to include the term. [¶] The arbitrator considered all the evidence and entered an award. He did not provide the reasons for the award, so to some extent the petition speculated, but assuming arguendo that the contract was reformed to add the missing term for which substantial testimony existed to indicate that was omitted, the arbitrator rendered a fair result."

Sellers argued that the arbitrator was not bound by the integration clause, could make an award to include a term which had been omitted from the contract, and that the evidence supported that result.[1] The trial court denied the petition on the ground that there was no basis under section 1286.2 to justify setting aside the award. The court confirmed the award and entered judgment for Sellers. Bonshire appeals from the judgment.

### DISCUSSION

Appellant argues that the trial court should have vacated the arbitrator's award pursuant to section 1286.2, subdivision (d) because the arbitrator exceeded his powers by using extrinsic evidence, contrary to the

---

[1]At oral argument, counsel for Sellers argued that the arbitration clause contains a waiver of the right to appeal. He conceded that this argument was not made in the briefs. An argument not raised in the briefs is waived. (See *Wurzl* v. *Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1 [54 Cal.Rptr.2d 512].) Even if we were to address the merits of the argument, we would disagree with the construction urged by Sellers. The clause provides: "Any dispute or claim in law or equity arising out of this contract or any resulting transaction shall be decided by neutral binding arbitration in accordance with the rules of the American Arbitration Association, *and not by court action except as provided by California law for judicial review of arbitration proceedings.*" (Italics added.) We interpret the clause to allow judicial review, including appellate review.

integration clause. Section 1286.2, subdivision (d) provides that the trial court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

■ "[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899].) The Supreme Court again addressed the standard of review for an arbitration award in *Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Intel*). Appellant relies on the rules announced in *Intel* in arguing for reversal. The *Intel* court ruled: "Arbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract. [Citation.] The remedy awarded, however, must bear some rational relationship to the contract and the breach. The required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent. [Citation.] The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator)." (*Intel, supra*, 9 Cal.4th at p. 381.)

■ The Supreme Court emphasized that there is a role for the courts in reviewing arbitration awards: "The award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is compelled to infer the award was based on an extrinsic source. [Citations.]" (*Intel, supra*, 9 Cal.4th at p. 381.) The contract between the parties is the source of the arbitrator's authority: "We do not, by the above, intend to suggest an arbitrator's exercise of discretion in ordering relief is unrestricted or unreviewable. Such an extreme position enjoys no support in our statutes or cases. The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may, under sections 1286.2 and 1286.6, be corrected or vacated by the court. Unless the parties 'have conferred upon the arbiter the unusual power of determining his own jurisdiction' [citation], the courts retain the ultimate authority to overturn awards as beyond the arbitrator's powers, whether for an unauthorized remedy or decision on an unsubmitted issue." (*Id.* at p. 375.) The *Intel* court recognized that the parties may contract to require an arbitrator to follow principles of law: "Arbitrators, unless specifically restricted by the agreement to following legal rules, ' "may base their decision upon broad principles of justice and equity . . . ." [Citations.]' " (*Id.* at pp. 374-375.)

■ Sellers first argue that it is sheer speculation that the arbitrator relied on extrinsic evidence in making his award. Applying the principles announced in *Intel*, we are compelled to conclude that he relied on extrinsic evidence. Through arbitration, Sellers sought the amount of Viking's cash in bank, based on their argument that the parties agreed to this term, but it was mistakenly omitted from the written contract. The total sum they sought in arbitration, $73,099.50, is identical to the sum awarded by the arbitrator.

The inference that the arbitrator relied upon extrinsic evidence of the parties' intent is bolstered by the briefing submitted to the trial court by Sellers. In their response to the petition to vacate the award, Sellers repeatedly relied on testimonial and documentary evidence which was presented to the arbitrator regarding the omission of the cash in bank term from the written contract. They attached their arbitration brief, which summarized the expected testimony of various witnesses as to this omission and the true intent of the parties.

From this record, we are compelled to conclude that the arbitrator must have relied on extrinsic evidence that the parties intended the cash in bank to go to Sellers, and based his award on that conclusion. The integration clause of the contract expressly prohibited the introduction of such extrinsic evidence at arbitration, and provided that the terms of the contract could not be contradicted by extrinsic evidence. We turn to the issue of whether the award should have been vacated because of the arbitrator's reliance on extrinsic evidence.

Sellers argue the award was properly confirmed because the award bears some rational relationship to the contract and the breach, citing *Intel, supra*, 9 Cal.4th at page 381. This is a correct statement of a principle announced in *Intel*, as far as it goes. Sellers also assert that judicial review of arbitration awards is extremely limited, and that arbitrators have great latitude in fashioning a remedy. The problem with Sellers' argument is their failure to take into account the impact of the contractual prohibition on extrinsic evidence on the power of the arbitrator to fashion a remedy based on such evidence.

■ As we have discussed, the Supreme Court recognized that the parties may contract to limit the powers of an arbitrator. (*Intel, supra*, 9 Cal.4th at p. 375.) The *Intel* court also ruled that the parties may specifically agree to compel the arbitrator to follow legal rules. (*Id.* at pp. 374-375.) "The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate." (*Id.* at p. 375.)

Both appellant and Sellers cite *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576 [19 Cal.Rptr.2d 295]. In that case, the

Court of Appeal concluded that while the general rule is that an arbitrator's decision is not reviewable for errors of fact or law, there is an exception where the arbitrator arbitrarily remakes the contract. (*Id.* at pp. 591-592.) The Supreme Court declined to adopt the "arbitrary remaking" standard in *Intel*: "Recent decisions in the Courts of Appeal have employed two formulas to determine whether an arbitrator's award exceeded his or her powers. The courts have asked whether the award rests on a 'completely irrational' construction of the contract [citation] or whether it amounts to an 'arbitrary remaking' of the contract (e.g., *Blue Cross of California* v. *Jones* (1993) 19 Cal.App.4th 220, 228 [23 Cal.Rptr.2d 359]; *Pacific Gas & Electric Co.* v. *Superior Court* (1993) 15 Cal.App.4th 576, 592 [19 Cal.Rptr.2d 295]; *Southern Cal. Rapid Transit Dist.* v. *United Transportation Union* [(1992)] 5 Cal.App.4th [416,] 423 [6 Cal.Rptr.2d 804]). These tests were combined in *Southern Cal. Rapid Transit Dist.* v. *United Transportation Union, supra,* 5 Cal.App.4th at page 423, into a single formula: 'Generally, a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties.' [¶] These statements of the standard tend to focus the inquiry on the arbitrator's construction of the contract. Useful as such an examination may sometimes be, it is incomplete as a test of whether arbitrators have exceeded their powers in awarding a particular item of damages or other relief. The critical question with regard to remedies is not whether the arbitrator has rationally interpreted the parties' agreement, but whether the remedy chosen is rationally drawn from the contract as so interpreted." (*Intel, supra,* 9 Cal.4th at pp. 376-377, fn. omitted.)

▆▆▆▆ The contract establishes that the parties agreed to limit the powers of the arbitrator by prohibiting the introduction of, and reliance on, extrinsic evidence. In light of that limitation, we cannot say that an award based on a term, which extrinsic evidence established was omitted from the contract, is rationally related to the contract. The arbitrator exceeded his powers within the meaning of section 1286.2, subdivision (d).

The court in *Pacific Gas & Electric Co.* v. *Superior Court, supra,* 15 Cal.App.4th 576 addressed an issue not raised in *Intel*—the power of an arbitrator to reform a contract without exceeding his or her power. The court cited 3 Corbin on Contracts (1962) section 540, pages 88-94, which identifies classic reformation as a situation where a contract is formed, but a provision of the writing that is executed, through mistake such as a scrivener's error, does not embody the agreement of the parties. As the court in *Pacific Gas & Electric Co.* observed, in such a case, the court may receive evidence of the actual agreement and correct the error by reforming the contract. (15 Cal.App.4th at p. 593, citing Civ. Code, § 3399.) From this, the

court concluded: "There is no reason to hold that an arbitrator is not given the same power by a contract, as here, calling for arbitration of disputes arising under the provisions of a written contract *without language expressly prohibiting such reformation*." (*Ibid.*, italics added.)

As we have discussed, the parties here included precisely such an express prohibition on reformation of the contract in the integration clause. This language disposes of Sellers' reliance on general principles regarding the reformation of contracts. The arbitrator was without power to reform the contract to add the cash in bank term, and exceeded his powers in doing so. The trial court should have granted the motion to vacate the award.

## DISPOSITION

The judgment is reversed. Appellant is to have his costs and fees on appeal.

Baron, J., and Aranda, J.,* concurred.

A petition for a rehearing was denied February 28, 1997, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied July 16, 1997.

---

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.