[No. A089824. First Dist., Div. Three. May 3, 2001.]

MAUREEN H. ALEXANDER, Plaintiff and Appellant, v.
BLUE CROSS OF CALIFORNIA, Defendant and Respondent.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication except for parts B and C of the Discussion.

**COUNSEL**

Law Offices of James A. Alexander, James A. Alexander and Edward J. Kiernan for Plaintiff and Appellant.

Janet Andrea for Defendant and Respondent.

**OPINION**

**PARRILLI, J.**—The Code of Civil Procedure empowers arbitrators in certain cases to impose the discovery sanctions available in superior court. In this case, we hold that an arbitrator's refusal to impose a discovery sanction provides no ground to vacate the arbitration award, even if the sanction is mandatory under the discovery statutes.

Maureen H. Alexander appeals from a judgment confirming an arbitration award in favor of Blue Cross of California (Blue Cross). Alexander contends the award should have been vacated because the arbitrator exceeded his powers by refusing to deem that Blue Cross had admitted requests for admissions to which it failed to respond. In the published part of our

opinion, we reject that argument. In the unpublished part of the opinion, we conclude we are bound by the trial court's factual findings that Blue Cross did not engage in misconduct during arbitration, and that the arbitrator was not biased against Alexander. Consequently, we affirm the judgment.

BACKGROUND

Viewing the evidence in the light most favorable to the judgment confirming the arbitration award, as we must (*Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1273 [79 Cal.Rptr.2d 726]), the record discloses the following facts:

Alexander had health insurance coverage under a Blue Cross "Prudent Buyer" plan. The plan included a provision for binding arbitration by the American Arbitration Association according to its Commercial Rules of Arbitration. In September 1997, Alexander was involved in an automobile accident that caused her to have neck pain. Her primary care physician recommended that she see Dr. Adey, a neurosurgeon with Diablo Neurosurgical Medical Group, to determine the source of the pain. However, Alexander was unable to get an immediate appointment with Dr. Adey and instead saw Dr. Chen, who belonged to the same medical group and was a participating physician in the Blue Cross Prudent Buyer plan.

Dr. Chen met with Alexander in his office for 20 to 30 minutes and asked questions about her physical and mental condition. He then took Alexander to an examination room and told her to disrobe to her undergarments and put on a medical gown, which she did. There was no nurse in the examination room. After observing Alexander's gait and testing her reflexes, Dr. Chen conducted a "sensory pinprick examination" on her hands, arms, and back. During this examination, he lightly pricked Alexander with a safety pin and asked if she felt the pinprick. He then removed her gown and continued the pinprick test on and below her breasts and down her torso to below her navel. Dr. Chen did not explain the reason for the pinprick exam, or ask permission to remove Alexander's gown. However, Alexander made no objection during the pinprick exam.

Alexander believed Dr. Chen's examination was inappropriate and sexually motivated. She filed complaints with Blue Cross and the California Medical Board. She did not sue Dr. Chen for malpractice. The California Medical Board took no action against Dr. Chen. Blue Cross investigated Alexander's complaint, and obtained the opinion of an independent

neurosurgeon who concluded that the pinprick examination was "necessary and appropriate." Thus, Blue Cross did not discipline Dr. Chen.

Unhappy with these results, Alexander filed a written demand for arbitration against Blue Cross, alleging that Blue Cross had breached its contract with her and was negligent in its investigation of Dr. Chen. After taking evidence, the arbitrator found against Alexander and issued a defense award in favor of Blue Cross.

Alexander's primary contention on appeal does not focus on the arbitration award itself, but on the arbitrator's prehearing discovery orders. The arbitrator had ruled on a series of discovery motions brought by Alexander to compel Blue Cross to answer interrogatories and requests for admission. The arbitrator granted the motions in part, ordering Blue Cross to respond to the requests for discovery and pay Alexander $3,450 in sanctions. The arbitrator decided that because of its delay in responding, Blue Cross had waived all objections (except the attorney-client privilege) to nearly all the requests for discovery. However, the arbitrator did not grant Alexander's request to treat her requests for admissions *as* admitted. Instead, he ordered Blue Cross to respond to those requests without objection. (See Code Civ. Proc., § 2033, subd. (k).)[1]

After the arbitrator issued his final award, Alexander filed a petition in superior court to vacate the award. Blue Cross filed a cross-petition to confirm the award. The petition to vacate alleged that: (1) the arbitrator exceeded his powers by not adhering to California discovery law; (2) the arbitrator engaged in misconduct showing a bias in favor of Blue Cross; and (3) Blue Cross engaged in misconduct by withholding information during discovery.

The trial court denied the petition to vacate and granted the petition to confirm the award. The court found that: (1) the arbitrator did not exceed the

[1]Our Supreme Court recently outlined the procedure a court must follow when a party fails to timely respond to a request for admissions: "Under [section 2033] subdivision (k), the initial penalty for failure to respond is the waiver of all objections. Once the propounding party files a motion for a deemed admitted order, the nonresponding party then faces an additional penalty—mandatory monetary sanctions. (See subd. (k).) Subdivision (m) [of section 2033] then describes the consequences of failing to respond before the hearing on the motion and the resulting entry of a deemed admitted order. Now, the nonresponding party can only escape a binding admission by establishing 'mistake, inadvertence, or excusable neglect' and no substantial prejudice to the propounding party. (*Ibid.*) The nonresponding party also faces the likely imposition of more sanctions at the discretion of the trial court. (See *ibid.*) This graduated system of enforcement furthers the legislative purpose behind section 2033 by fitting the punishment of the nonresponding party to the offense." (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 982 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

scope of his powers; (2) the arbitrator was not biased and did not engage in misconduct; and (3) Blue Cross did not engage in misconduct. Alexander filed a timely notice of appeal.

## DISCUSSION

■ In *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*), our Supreme Court made it clear that the grounds for judicial review of a contractual arbitration award are extremely limited. Under *Moncharsh*, we cannot review the merits of the underlying controversy, the arbitrator's reasoning, or the sufficiency of the evidence supporting the award. (*Id.* at p. 11.) Even "an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Id.* at p. 33.) Code of Civil Procedure sections 1286.2 and 1286.6 provide the only grounds for challenging an arbitration award.[2] (*Moncharsh, supra,* 3 Cal.4th at p. 33.)

■ Moreover, in reviewing a judgment confirming an arbitration award, we must accept the trial court's findings of fact if substantial evidence supports them, and we must draw every reasonable inference to support the award. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 24 [96 Cal.Rptr.2d 553].) On issues concerning whether the arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373, 376 fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994]; *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 944-945 [75 Cal.Rptr.2d 1].)

With these rules as our guide, we examine appellant's claims.

### A. *The Arbitrator Did Not Exceed His Powers in Ruling on Discovery Motions*

Section 1286.2 authorizes a court to vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." ■ Alexander contends the arbitrator exceeded his powers because he did not impose the discovery sanction she believes was mandated by law. She claims section 2033, subdivision (k) required the arbitrator to deem admitted the requests for admission to which Blue Cross failed to timely respond.

---

[2]Subsequent statutory references are to the Code of Civil Procedure, unless otherwise noted.

As a general rule, the right to discovery is highly restricted in arbitration proceedings. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 690 fn. 9 [99 Cal.Rptr.2d 809].) However, sections 1283.1 and 1283.05 grant arbitrators broad authority to order discovery in certain types of arbitration proceedings. Section 1283.1 confers that authority in any arbitration "arising out of or resulting from any injury to, or death of, a person caused by the wrongful act or neglect of another." (§ 1283.1, subd. (a).) In all other arbitrations, the arbitrator may grant discovery "[o]nly if the parties by their agreement so provide . . . ." (§ 1283.1, subd. (b); *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1802, fn. 10 [13 Cal.Rptr.2d 678].) Here, the arbitrator ruled that section 1283.1 applied because Alexander's case involved personal injury resulting from a wrongful act or neglect. Consequently, the arbitrator ordered discovery pursuant to section 1283.05.

Where section 1283.1 applies, "[a]ll of the provisions of Section 1283.05 shall be conclusively deemed to be incorporated into, made a part of, and shall be applicable to" the arbitration agreement. (§ 1283.1, subd. (a).) Section 1283.05, subdivision (a) provides that the parties to the arbitration "shall have the right to take depositions and to obtain discovery" and to exercise all discovery rights "as if the subject matter of the arbitration were pending before a superior court of this state in a civil action . . . ." Section 1283.05, subdivision (b) states that the arbitrator "shall have power . . . to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court of this state . . . ."[3]

---

[3]The relevant provisions of section 1283.05, in full, are as follows: "To the extent provided in Section 1283.1 depositions may be taken and discovery obtained in arbitration proceedings as follows: [¶] (a) After the appointment of the arbitrator or arbitrators, the parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration, and, to that end, to use and exercise all of the same rights, remedies, and procedures, and be subject to all of the same duties, liabilities, and obligations in the arbitration with respect to the subject matter thereof, as provided in Chapter 2 (commencing with Section 1985) of, and Article 3 (commencing with Section 2016) of Chapter 3 of, Title 3 of Part 4 of this code, as if the subject matter of the arbitration were pending before a superior court of this state in a civil action other than a limited civil case, subject to the limitations as to depositions set forth in subdivision (e) of this section. [¶] (b) The arbitrator or arbitrators themselves shall have power, in addition to the power of determining the merits of the arbitration, to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court of this state under the provisions of this code, except the power to order the arrest or imprisonment of a person. [¶] (c) The arbitrator or arbitrators may consider, determine, and make such orders imposing such terms,

Alexander contends that because section 1283.05 was incorporated into the parties' arbitration agreement, California discovery law controlled the arbitrator's power to enforce discovery. Therefore, she argues that any discovery order inconsistent with California law exceeds the arbitrator's powers. We cannot agree. Arbitrators do not "exceed[] their powers" within the meaning of section 1286.2, subdivision (d) "merely by rendering an erroneous decision on a legal or factual issue, *so long as the issue was within the scope of the controversy submitted to the arbitrators.* 'The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' (*Moncharsh, supra,* at p. 28.)" (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775-776 [94 Cal.Rptr.2d 597, 996 P.2d 699], italics added.) In short, "[h]aving submitted the [discovery] issue to arbitration, [Alexander] cannot maintain the arbitrator[] exceeded [his] powers, within the meaning of section 1286.6, subdivision (b), by deciding it, even if [he] decided it incorrectly." (*Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787 [94 Cal.Rptr.2d 603, 996 P.2d 706].)

Alexander claims sections 1283.05 and 1283.1 present a special situation, because they specifically compel an arbitrator to decide discovery disputes by imposing *precisely* the same terms, conditions, consequences, liabilities, and penalties as a trial court would impose in like circumstances in a civil action. The arbitrator considered and rejected this argument, noting that section 1283.05, subdivision (b) "gives the arbitrator 'POWER . . . . to enforce the rights, remedies, procedures, duties liabilities and obligations of discovery . . .' . . . , but it does not give the arbitrator the obligation or impose upon the arbitrator the requirement to do so." (Capitals added by arbitrator.) The arbitrator therefore concluded he had "certain discretion and flexibility" in ruling on the discovery motions, and was not required to treat Alexander's requests for admission as "deemed admitted," even if a trial court would have been required to do so in the same circumstances. (See § 2033, subd. (k); *Wilcox v. Birtwhistle, supra,* 21 Cal.4th at pp. 978-979.)

We agree with the arbitrator's interpretation of the statute. It is one thing for the Legislature to give an arbitrator the power to impose the discovery sanctions available to a trial court in the same circumstances. It is quite another for the Legislature to say that the arbitrator must impose the precise sanctions a trial court would impose. The Legislature has simply not gone that far in sections 1283.1 and 1283.05.

---

conditions, consequences, liabilities, sanctions, and penalties, whenever necessary or appropriate at any time or stage in the course of the arbitration, and such orders shall be as conclusive, final, and enforceable as an arbitration award on the merits, if the making of any such order that is equivalent to an award or correction of an award is subject to the same conditions, if any, as are applicable to the making of an award or correction of an award."

The objective of statutory interpretation is to ascertain and effectuate legislative intent. The first step in determining legislative intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 778 [98 Cal.Rptr.2d 1, 3 P.3d 286].) Here, the statute provides that the arbitrator "*shall have power,* in addition to the power of determining the merits of the arbitration, to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court of this state under the provisions of this code, except the power to order the arrest or imprisonment of a person." (1283.05, subd, (b).) The plain and commonsense meaning of these terms is that the arbitrator has the power, but not the duty, to impose discovery sanctions short of arrest or imprisonment.[4]

Moreover, even if sections 1283.1 and 1283.05 were read to mean that arbitrators must precisely follow California discovery law, this would not mean that arbitrators exceed their powers when they fail to follow that law. Even where an arbitration agreement requires the arbitrator to apply a particular law or body of law, "an arbitrator's failure to apply such a law is not in excess of an arbitrator's powers within the meaning of section 1286.2, subdivision (d)." (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 244 [28 Cal.Rptr.2d 402] [arbitrator did not exceed power by failing to apply California Corporations law even though agreement stated that California law was to control].)

A different conclusion would unduly extend the scope of judicial review of arbitration proceedings. "The fact that the parties restrict the arbitrator to a decision of the issues in the manner of a court of law does not mean that they expect that the decision is reviewable. *The mode of decision and its reviewability are separate questions.*" (*Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 589 [19 Cal.Rptr.2d 295], italics added.) Thus, even if the Legislature intended for arbitrators to follow California law in ruling on discovery motions, discovery orders in arbitration would still be subject to the same limited judicial review as other arbitration orders. The

---

[4]Our Supreme Court has noted that "parties entering into commercial contracts with arbitration clauses, if they wish the arbitrator's remedial authority to be specially restricted, would be well advised to set out such limitations explicitly and unambiguously . . . ." (*Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th 362, 383; see also *California Faculty Assn. v. Superior Court, supra,* 63 Cal.App.4th at p. 953.) The Legislature did not make the discovery statutes explicitly and unambiguously binding on arbitrators when it enacted sections 1283.05 and 1283.1.

Legislature has specified that arbitrators' discovery orders "shall be as conclusive, final, and enforceable as an arbitration award on the merits . . . ." (§ 1283.05, subd. (c).) This means that, as with other arbitration orders, even "an error of law apparent on the face of the [discovery order] that causes substantial injustice does not provide grounds for judicial review." (*Moncharsh, supra,* 3 Cal.4th at p. 33.)

*Bonshire v. Thompson* (1997) 52 Cal.App.4th 803 [60 Cal.Rptr.2d 716], which Alexander cites, does not compel a different result. There, the arbitration agreement stated that " 'no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding . . . involving this agreement.' " (*Id.* at p. 806, italics omitted.) The *Bonshire* court concluded the arbitrator had exceeded his power under the agreement by considering extrinsic evidence. The court noted that "the parties may contract to limit the powers of an arbitrator" and had specifically done so by prohibiting the introduction of extrinsic evidence. (*Id.* at pp. 810, 812; see also *California Faculty Assn. v. Superior Court, supra,* 63 Cal.App.4th at p. 944 [courts are bound to uphold parties' express agreement to restrict or limit scope of arbitral authority].)

By contrast, section 1283.05 does not expressly limit an arbitrator's power to impose discovery sanctions. To the contrary, it is a *grant* of power to do so. An arbitrator who decides not to impose a particular sanction required by the discovery statutes has not exceeded his or her power, but declined to exercise it. Whether that decision was correct is not an issue that is subject to judicial review. (*Moncharsh, supra,* 3 Cal.4th at p. 28.)[5]

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[5]In her reply brief, Alexander contends Blue Cross waived any issues arising under sections 1283.05 and 1283.1 because it did not expressly address those statutes its brief. We disagree. Blue Cross adequately responded to the arguments in Alexander's opening brief. Moreover, even if Blue Cross had failed to file any brief, we would still examine the record on the basis of Alexander's brief and reverse only if prejudicial error were found. (*In re Bryce C.* (1995) 12 Cal.4th 226, 233 [48 Cal.Rptr.2d 120, 906 P.2d 1275].) We have found no such error in this case.

Alexander occupies a glass house when it comes to throwing stones consisting of the finer points of appellate procedure. Among other things, Alexander's counsel has violated the rules by failing to consecutively number the pages of her appendix (Cal. Rules of Court, rules 5.1(c)(1), 9(a)) and failing to support each pertinent statement of fact with a citation to the record (Cal. Rules of Court, rule 15(a)).

*See footnote, *ante,* page 1082.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs.

McGuiness, P. J., and Horner, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 2001. Brown, J., did not participate therein.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.