Filed 9/30/20  Burke, Williams & Sorenson v. Pinot-Walsh CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### PUBLIC—REDACTED VERSION
**Redacts material from sealed record.  (Cal. Rules of Court, rules 8.45, 8.46(f)(1) and (f)(2).)**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BURKE, WILLIAMS & SORENSON LLP et al., | H042868 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 1-13-CV257143) |
| v. | |
| AMY PINTO-WALSH, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

This appeal arises from an attorney fee dispute between appellant Amy Pinto-Walsh and her former attorneys, respondents Burke, Williams & Sorenson (BWS) and Ropers, Majeski, Kohn & Bentley (RMKB).  The parties entered into a stipulation and arbitration agreement to resolve the attorney fee dispute.  After an arbitration hearing, the arbitrator awarded BWS and RMKB a significant amount of attorney fees.

Pinto-Walsh filed a motion to vacate the arbitration award and BWS and RMKB filed a motion to confirm the award.  After considering both motions, the trial court confirmed the arbitration award.  The record reflects the arbitration award was entered on September 18, 2015.

On appeal, Pinto-Walsh contends that the trial court erred in confirming the arbitration award because (1) the arbitrator exceeded his powers by issuing an award in violation of public policy; (2) the arbitrator acted outside his statutory and contractual

authority; (3) the arbitrator failed to disclose his relationships with the attorneys from BWS and RMKB; and (4) the arbitrator failed to consider material evidence.[1]

For the reasons stated below, we will affirm the judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In May 2012 Pinto-Walsh entered into an attorney-client fee agreement with BWS.  In June 2012 Pinto-Walsh entered into a second fee agreement with RMKB as

---

[1] Nearly all of the record and the parties' briefs on appeal were filed under seal pursuant to this court's orders of March 6, 2019  and April 30, 2019, in accordance with the trial court's sealing orders.  On June 5, 2020, this court issued an order to show cause why this court should not order the following items in the record on appeal to be unsealed because the trial court's order sealing the entire trial court record was overbroad and failed to expressly find facts to support sealing the entire record.  (Cal Rules of Court, rule 2.550 (d).):  All portions of the opening brief, respondent's brief, and reply brief, and all portions of the record filed on appeal that address or relate to the following issue stated in the opening brief:  "Whether the trial court erred in failing to vacate an arbitration award where the arbitrator should have been disqualified for failing to disclose whether he had professional or important personal relationships with one party and/or its counsel."

On August 31, 2020, this court issued a second order to show cause why certain portions of the record and the parties' briefs should be unsealed because the trial court's order sealing the entire trial court record was overbroad and failed to expressly find facts to support sealing the entire record, and because unsealing is necessary for the filing of a public redacted version of the court's opinion in this matter.  (Cal. Rules of Court, rules 2.550(d), 8.45, 8.46(f)(1) & (f)(2).)

Having received no responses to the orders to show cause from respondents, and having considered the responses of appellant, concurrent with the filing of this opinion, we hereby order the records and briefs previously filed under seal be unsealed as follows: (1) All portions of the opening brief, respondent's brief, and reply brief, and all portions of the record filed on appeal that address or relate to the following issue stated in the opening brief:  Whether the trial court erred in failing to vacate an arbitration award where the arbitrator should have been disqualified for failing to disclose whether he had professional or important personal relationships with one party and/or its counsel; (2) Clerk's transcript pages 103, 143; 146; 772; 600, 676, lines 2-9; 605, lines 11-12; 614, lines 5-10; 615-616; 625, line 5; 118-119; 302-303; 306-308; 613, lines 12-18; 613, lines 22-27; 611, lines 22-23; (3) Opening brief pages 31, paragraph 1; 33; 36, paragraph 1; 38, 40-41; and (4) Respondent's brief page 36.

The order unsealing portions of the record and the parties' briefs does not affect any continuing obligations of confidentiality in the underlying matter.

co-counsel to BWS. Both fee agreements concerned Pinto-Walsh's claims in the underlying matter.

Pinto-Walsh's claims in the underlying matter were mediated in 2012. After the mediation, an attorney-client conflict arose. Pinto-Walsh discharged BWS and RMKB as her attorneys in the underlying matter and substituted the law firm of Bradshaw & Associates (Bradshaw). Subsequently, Bradshaw informed BWS and RMKB that the matter had settled.

The parties entered into a stipulation and arbitration agreement regarding the attorney fee dispute that had arisen between Pinto-Walsh and her former attorneys in the underlying matter, BWS and RMKB. Under the terms of the arbitration agreement, the arbitrator was selected by JAMS, which assigned the Hon. William F. Martin (Ret.).

Judge Martin issued a November 13, 2013 arbitration award that awarded BWS and RMKB a significant amount of attorney fees and costs. BWS and RMKB filed a petition to confirm the arbitration award pursuant to Code of Civil Procedure section 1285.[2] In response, Pinto-Walsh filed a motion to transfer venue, which the trial court denied. Pinto-Walsh also filed a petition to vacate the arbitration award.

The trial court issued the final statement of decision on September 18, 2015. After considering the parties' briefing and argument, and overruling Pinto-Walsh's objections to the tentative statement of decision, the trial court concluded that Pinto-Walsh "has failed to submit sufficient evidence in support of any ground asserted in her Petition to Vacate the Arbitration Award."

The trial court's specific rulings included, among others, rejection of Pinto-Walsh's contention that "Judge Martin had a pre-existing relationship, professional or personal, with any RMKB lawyer was based purely on speculation" and a ruling that Pinto-Walsh had failed to submit sufficient evidence showing that the arbitration award

_____

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

was either unconscionable or violated the Professional Rules of Conduct. The trial court also denied Pinto-Walsh's request for a stay to conduct discovery into any relationship between Judge Martin and RMKB partners Wilson and Ward.

Having determined that Pinto-Walsh failed to submit sufficient evidence in support of any ground asserted in her petition to vacate the arbitration award, the trial court granted the petition to confirm the arbitration award. The record reflects that judgment was entered on September 18, 2015.

## III. DISCUSSION

Pinto-Walsh contends on appeal that the trial court erred in confirming the arbitration award because (1) the arbitrator exceeded his powers by issuing an award in violation of public policy; (2) the arbitrator acted outside his statutory and contractual authority; (3) the arbitrator failed to disclose his relationships with the attorneys from BWS and RMKB; and (4) the arbitrator failed to consider material evidence.

BWS and RMKB argue that Pinto-Walsh has forfeited these contentions because her briefs present only a one-sided statement of facts. (See *Mendoza v. City of West Covina* (2012) 206 Cal.App. 4th 702, 714.) In light of the " ' "guiding principle of deciding cases on their merits," ' " we will reach the merits of Pinto-Walsh's contentions despite any deficiencies in the briefs. (See *Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal. App. 4th 632, 644.)

### A. *General Legal Principles and Standard of Review*

Through the California Arbitration Act, set forth in Title 9 of the Code of Civil Procedure (§ 1280 et seq.), the Legislature has expressed a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).)

" 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' " (*Richey*

4

*v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).)  "[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final" (*Moncharsh*, *supra*, 3 Cal.4th at p. 9), and thus they agree to bear the risk of an arbitrator's mistake "in return for a quick, inexpensive, and conclusive resolution to their dispute."  (*Id*. at p. 11.)

Accordingly, courts generally may not review arbitration awards for errors of fact or law, "even when those errors appear on the face of the award or cause substantial injustice to the parties."  (*Richey*, *supra*, 60 Cal.4th at p. 916.)  "An award may be vacated only for fraud, corruption, misconduct, an undisclosed conflict, or similar 'circumstances involving serious problems with the award itself, or with the fairness of the arbitration process.'  (*Moncharsh*, at p. 12; see § 1286.2, subd. (a).)  Otherwise, judicial corrections are limited to remedying 'obvious and easily correctable mistake[s],' 'technical problem[s],' and actions in excess of authority so long as the correction leaves the merits of the decision unaffected.  (*Moncharsh*, at p. 13.)"  (*Heimlich v*. *Shivji* (2019) 7 Cal.5th 350, 367 (*Heimlich*).)

" ' "On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard.  [Citations.]  To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." '  [Citations.]"  (*ECC Capital Corp*. *v*. *Manatt*, *Phelps & Phillips*, *LLP* (2017) 9 Cal.App.5th 885, 900 (*ECC Capital*).)

### B.  Violation of Public Policy

On appeal, Pinto-Walsh contends that the arbitration award must be vacated because the arbitrator exceed his powers by issuing an award that contravenes the public policy set forth in the Rules of Professional Conduct.

Section 1286.2, subdivision (a)(4) provides that an arbitration award shall be vacated if the court determines that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the

5

controversy submitted." "Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy. [Citations.]" (*Richey*, *supra*, 60 Cal.4th at p. 916.)

Our analysis is guided by the California Supreme Court's decision in *Moncharsh*. In *Moncharsh*, the arbitration concerned a fee-splitting agreement between a law firm and Philip Moncharsh, a former firm attorney. (*Moncharsh*, *supra*, 3 Cal.4th at p. 7.) The arbitrator determined that, with the exception of one client, the fee-splitting agreement was not unconscionable and did not violate the Rules of Professional Conduct, and the trial court confirmed the arbitration award. (*Ibid.*) After the appellate court affirmed the judgment, the Supreme Court granted review to clarify when the trial court may review an arbitrator's decision. (*Id*. at p. 8.) The court ruled that "[i]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id*. at p. 11.)

The Supreme Court in *Moncharsh* court also rejected Moncharsh's public policy argument. "Moncharsh contends, as he did before the arbitrator, that [the fee-splitting agreement ] is illegal and violates public policy because, inter alia, it violates former rules 2-107 [prohibiting unconscionable fees], 2-108 [prohibiting certain types of fee splitting arrangements], and 2-109 [prohibiting agreements restricting an attorney's right to practice], of the Rules of Professional Conduct of State Bar. We perceive, however, nothing in the Rules of Professional Conduct at issue in this case that suggests resolution by an arbitrator of what is essentially an ordinary fee dispute would be inappropriate or would improperly protect the public interest. Accordingly, judicial review of the arbitrator's decision is unavailable." (*Moncharsh*, *supra*, 3 Cal.4th at pp. 32-33, fn. omitted; see also *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, 1418 ["To permit judicial review of the arbitrator's award in this case would be contrary to the strong policy favoring the finality of arbitration awards, even

6

though the amount [of attorney fees] awarded has been couched as a public policy violation"].)

Under *Moncharsh*, *supra*, 3 Cal.4th at pages 11, 32-33, we determine that judicial review of the arbitration award pursuant to section 1286.2, subdivision (a)(4) is not required.  Pinto-Walsh essentially argues unreviewable errors of fact or law in support of her contention that the arbitrator exceeded his powers by issuing an award that contravenes the public policy set forth in the Rules of Professional Conduct.

Even assuming, without deciding, that judicial review is available with respect to the public policy issue, we find no merit in Pinto-Walsh's contention that Judge Martin exceeded his powers by issuing an arbitration award that contravenes the public policy set forth in the Rules of Professional Conduct.  Our standard of review limits us to determining whether the trial court's finding is supported by substantial evidence. (See *ECC Capital*, *supra*, 9 Cal.App.5th at p. 900.)  In our review, we must also "draw every reasonable inference to support the award.  [Citation.]"  (*Alexander v. Blue Cross of California* (2001) 88 Cal. App. 4th 1082, 1087.)

Based on the record before us, we determine that the trial court's finding that the arbitration award did not violate public policy is supported by substantial evidence. (See *ECC Capital*, *supra*, 9 Cal.App.5th at p. 900.)

**C. *The Arbitrator's Statutory and Contractual Authority***

Pinto-Walsh contends that the trial court erred in confirming the arbitration award because the arbitrator exceeded his statutory and contractual authority in awarding attorney fees that did not comport with the parties' fee agreements.

According to Pinto-Walsh, the arbitrator was required to apply the rules for contract interpretation set forth in Civil Code section 1636 et seq. and enforce the plain language of the BWS fee agreement.  BWS and RMKB disagree, maintaining that the California Supreme Court ruled in *Advanced Micro Devices v. Intel Corp.* (1994) 9 Cal.4th 362 (*Advanced Micro Devices*) and *Moncharsh* "that it is up to the arbitrator to

7

determine his/her scope of authority under the parties' agreement to arbitrate and that the courts must defer to the arbitrator's determination of the scope of his/her authority." We agree that California Supreme Court authority governs our resolution of the issue of whether, as Pinto-Walsh claims, Judge Martin exceeded his authority by failing to enforce the terms of the BWS fee agreement in determining the award of attorney fees.

In *Advanced Micro Devices*, the Supreme Court addressed the scope of the arbitrator's authority to decide a breach of contract issue and fashion a remedy. (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 366-367.)  The court ruled that "[a]rbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract.  [Citation.]  The remedy awarded, however, must bear some rational relationship to the contract and the breach.  . . .  Where the damage is difficult to determine or measure, the arbitrator enjoys correspondingly broader discretion to fashion a remedy.  [Citation.]  [¶]  The award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is *compelled* to infer the award was based on an extrinsic source.  [Citations.]  In close cases the arbitrator's decision must stand.  [Citation.]" (*Id.* at p. 381.)

Regarding the arbitrator's authority to fashion a remedy for breach of contract, the court in *Advanced Micro Devices* instructed that "[t]he choice of remedy . . . may at times call on any decision maker's flexibility, creativity and sense of fairness.  In private arbitrations, the parties have bargained for the relatively free exercise of those faculties.  Arbitrators, unless specifically restricted by the agreement to following legal rules, ' "may base their decision upon broad principles of justice and equity . . . ." [Citations.]' " (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 374-375.)

More recently, the California Supreme Court confirmed that "[w]hen parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract

8

interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 (*Gueyffier*).) Thus, "[a]bsent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation. [Citations.]" (*Id.* at p. 1182; *Heimlich*, *supra*, 7 Cal.5th at p. 358 [same].)

In the present case, the parties agreed to private arbitration to resolve their dispute arising out of the BWS and RMKB fee agreements. Accordingly, Judge Martin, as the arbitrator, had the authority to make factual findings, interpret the parties' fee agreements, and fashion any legal or equitable remedy that bore a rational relationship to the fee agreements. (See *Gueyffier*, *supra*, 43 Cal.4th at p. 1182; *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 381.) It cannot be disputed that Judge Martin's attorney fees award bears a rational relationship to the BWS and RMKB fee agreements.

Moreover, we are not persuaded by Pinto-Walsh's contention that Judge Martin exceeded his authority by failing to interpret the fee agreements under the rules for contract interpretation set forth in Civil Code section 1636 et seq. and enforce the specific terms of the agreements. As we have discussed, an arbitration award "is not ordinarily reviewable for error by either the trial or appellate courts" (*Moncharsh*, *supra*, 3 Cal.4th at p. 13) and "an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract" (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 381).

For these reasons, we find no merit in Pinto-Walsh's contention that the arbitration award must be vacated because Judge Martin exceeded his contractual and statutory authority.

9

### D. *Arbitrator Bias*

Pinto-Walsh contends that the trial court erred in denying her petition to vacate the arbitration award because Judge Martin "failed, and even refused, to disclose professional and extensive personal relationships" with the RMKB attorneys, and for that reason Judge Martin should have been disqualified.

### 1. Background

In her petition to vacate the arbitration award, Pinto-Walsh asserted that her investigator had discovered substantial evidence of Judge Martin's relationships with RMKB attorneys that Judge Martin had failed to disclose. The investigator reported in his declaration that Judge Martin and a RMKB partner, Richard K. Wilson, had graduated from the University of California, Berkeley, in the same year; Judge Martin and Wilson both worked as district attorneys in Northern California in 1977-1978; Wilson had practiced criminal defense in the geographical area where Judge Martin was a district attorney; RMKB partner Dennis J. Ward had been a pro tem judge and litigator in Santa Clara County and had worked with the Santa Clara judiciary for 30 years; and Judge Martin's former spouse and Ward's spouse worked in the same nursing field in the same area for decades.

In opposition to the petition to vacate the arbitration award, attorney Wilson stated in his supporting declaration that he did not have a personal or professional relationship with Judge Martin; he did not know Judge Martin when they were both students at the University of California, Berkeley; he did not work with Judge Martin when they were assistant district attorneys in different counties (Solano and Santa Clara); he never appeared before Judge Martin when he was on the bench; he has never socialized with Judge Martin; and he did not submit a letter of recommendation when Judge Martin applied for a judgeship.

Attorney Ward stated in his declaration in support of the opposition to the petition to vacate the arbitration award that he did not have a personal or professional relationship

with Judge Martin; he tried a case before Judge Martin 20 years ago; he has never socialized with Judge Martin or members of his family; his wife has no professional or personal relationship with any member of Judge Martin's family; and he did not submit a letter recommending Judge Martin for a judgeship.

The trial court found, as set forth in the statement of decision, that "[w]hen Judge Martin was assigned as the Arbitrator, Judge Martin made timely and complete disclosures of any relationship with all lawyers at RMKB. Richard K. Wilson and Dennis J. Ward were at all relevant times Partners at RMKB[.] RMKB was a party to the stipulation to arbitrate. At the time JAMS served its initial disclosures, any and all conflicts with RMKB were disclosed, including each and every RMKB office and attorney. That disclosure revealed that Judge Martin did not have a single conflict of interest related to any lawyer at any office of RMKB."

The trial court further found that "[f]ollowing the arbitration hearing, [Pinto-Walsh] made a request for a specific disclosure as to RMKB partner Dennis J. Ward. Judge Martin complied with this request and provided a supplemental disclosure specific to Dennis J. Ward. This supplemental disclosure was consistent with the initial disclosure as to all RMKB lawyers provided at the commencement of the arbitration. The Court finds that there is no evidence of a relationship between Judge Martin and any attorney at RMKB requiring disclosure."

In conclusion, the trial court stated that Pinto-Walsh "failed to submit sufficient evidence in support of her claim that she was prejudiced by the alleged failure by Judge Martin to submit a timely disclosure, or a specific disclosure as to Dennis J. Ward. [Pinto-Walsh]'s claim that Judge Martin had a pre-existing relationship, professional or personal, with any RMKB lawyer was based purely on speculation. [Pinto-Walsh] failed to submit any evidence in support of her claim that Judge Martin was biased in favor of RMKB."

11

## 2. Analysis

The California Supreme Court has stated the grounds for disqualification of an arbitrator: "The statutory scheme, in seeking to ensure that a neutral arbitrator serves as an impartial decision maker, requires the arbitrator to disclose to the parties any grounds for disqualification. Within 10 days of receiving notice of his or her nomination to serve as a neutral arbitrator, the proposed arbitrator is required, generally, to 'disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial.' (§ 1281.9, subd. (a).) Based upon these disclosures, the parties are afforded an opportunity to disqualify the proposed neutral arbitrator. (§ 1281.91, subds. (b), (d).) *If an arbitrator 'failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware,' the trial court must vacate the arbitration award.* (§ 1286.2, subd. (a)(6)(A).)" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381 (*Haworth*), italics added.)

"The applicable statute and standards enumerate specific matters that must be disclosed. The arbitrator must disclose specified relationships between the arbitrator and the parties to the arbitration, including involvement in prior arbitrations, an attorney-client relationship with any attorney involved in the arbitration, and any significant personal or professional relationship with a party or an attorney involved in the arbitration. (§ 1281.9, subd. (a)(3)-(6).) The arbitrator also must disclose 'any ground specified in Section 170.1 for disqualification of a judge,' as well as 'matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council.' (§ 1281.9, subd. (a)(1), (2); see Cal. Rules of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration (Ethics Standards).) The Ethics Standards require the disclosure of 'specific interests, relationships, or affiliations' and other 'common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial.' (Ethics Stds., com. to std. 7.)

12

Specific matters that must be disclosed include, for example, the arbitrator's financial interest in a party or the subject of the arbitration, the arbitrator's knowledge of disputed facts relevant to the arbitration, and the arbitrator's 'membership in any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation.' (Ethics Stds., std. 7(d)(13); id., std. 7(d)(9), (10), & (12).)" (*Haworth*, *supra*, 50 Cal.4th at p. 381.)

Pinto-Walsh contends that her petition to vacate the arbitration award should have been granted because there was an appearance of possible bias due to Judge Martin's "extensive links to Mr. Wilson and Mr. Ward," and his "refusal to address any personal and professional relationships with them." She also contends the arbitration award should be vacated so she can conduct discovery as to the past professional and personal relationships between Judge Martin and the RMKB attorneys, "including whether either had a hand in preparing Judge Martin's judicial application prior to his appointment to the bench in 1989."

BWS and RMKB argue there is no merit in Pinto-Walsh's contention of arbitrator bias, since, as shown by their declarations, there is no evidence of any relationship between Judge Martin and the RMKB attorneys, Wilson and Ward.

In *Haworth*, the California Supreme Court instructed that " '[a]n impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*.' [Citation.]" (*Haworth*, *supra*, 50 Cal.4th at p. 389.) The court also instructed that the de novo standard of review applied to "issues concerning arbitrator disclosure . . . ." (*Id*. at p. 388.)

Applying the de novo standard, we agree with the trial court that Pinto-Walsh presented no evidence to support a reasonable belief that Judge Martin was biased against Pinto-Walsh because he had a "significant personal or professional relationship" with either attorney Wilson or attorney Ward. (See *Haworth*, *supra*, 50 Cal.4th at p. 381.)

13

Pinto-Walsh's investigator discovered that Judge Martin and Wilson attended the same large university at the same time, and that Judge Martin served on the bench in the same geographical area that Wilson and Ward practiced law. As the trial court found, Pinto-Walsh's claim of a disqualifying personal or professional relationship between Judge Martin and either Wilson or Ward on the basis of this evidence is mere speculation. Our review of the available record shows that, to the contrary, Judge Martin, Wilson, and Ward and their families had no relationships at all, with the exception of the insignificant relationship of Ward trying a case before Judge Martin 20 years ago.

Accordingly, we determine that the trial court did not err in denying the petition to vacate the arbitration award on the ground of arbitrator bias and denying Pinto-Walsh's request for further discovery.

### E. *Evidentiary Error—Exclusion of Expert Opinion*

Finally, Pinto-Walsh contends that the arbitration award must be vacated because Judge Martin refused to hear and consider material evidence, consisting of the opinion of one of her experts regarding attorney fees.

The trial court determined that "[Pinto-Walsh] failed to submit sufficient evidence in support of her claim that the Arbitrator excluded material evidence or that [she] was substantially prejudiced therefrom."

Section 1286.2, subdivision (a)(5) provides in part that the court shall vacate an arbitration award when "[t]he rights of the party were substantially prejudiced by . . . the refusal of the arbitrators to hear evidence material to the controversy . . . ."

However, "vacation of an award for 'refusal . . . to hear evidence material to the controversy' (§ 1286.2, subd. (a)(5)) must rest on more than a simple error in applying the rules of evidence. . . . [S]ection 1286.2 subdivision (a)(5), 'if not properly limited, could swallow the rule that arbitration awards are generally not reviewable on the merits.' The provision is not 'a back door to *Moncharsh* through which parties may routinely test the validity of legal theories of arbitrators.' [Citation.] Instead, it was designed as a

14

'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' [Citation.] It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue. [Citation.] The Arbitration Act codifies 'the fundamental principle that "[a]rbitration should give both parties an opportunity to be heard." [Citation.] . . . [T]he opportunity to be heard must be extended to all parties equitably.' [Citation.]" (*Heimlich*, *supra*, 7 Cal.5th at pp. 368-369.)

We determine that Pinto-Walsh has not shown that Judge Martin's exclusion of certain expert opinion was prejudicial, for two reasons. First, the record reflects that Pinto-Walsh was not prevented from presenting evidence on the issue. (See (*Heimlich*, *supra*, 7 Cal.5th at pp. 368-369.) Second, "section 1286.2, subdivision (a)(5) does not contemplate vacation of an award merely because arbitrators refuse to consider evidence they find legally irrelevant, even if the irrelevance determination rests upon an incorrect legal foundation. [Citations.]" (*Id*. at p. 369.)

We are also not persuaded by Pinto-Walsh's reliance on the decision in *Burlage v. Superior Court* (2009) 178 Cal.App.4th 524). According to Pinto-Walsh, the present case is "nearly identical" to *Burlage*, where the appellate court ruled that the arbitration award should be vacated because the arbitrator had made a legal error and consequently excluded relevant evidence. (*Id*. pp. 529-530.) However, the decision in *Burlage* was disapproved by our Supreme Court in *Heimlich*, *supra*, 7 Cal.5th at page 370.

## F. *Evidentiary Error—Exclusion of Value-Added Evidence*

Pinto-Walsh also contends that Judge Martin made a prejudicial evidentiary error by refusing to consider the evidence of the value added by Bradshaw's contribution in obtaining the settlement.

The trial court found that Pinto-Walsh had not shown that she was not given adequate time to present evidence during the arbitration hearing. Accordingly, the trial court concluded that Pinto-Walsh had failed to submit sufficient evidence in support of

15

her-claim that she was substantially prejudiced by Judge Martin's decision to deny her motion to reopen the evidence after the conclusion of the hearing.

Pinto-Walsh asserts that she was prejudiced because Judge Martin struck all of her evidence regarding the value added by Bradshaw. However, as BWS and RMKB note, the record reflects that Judge Martin only struck the post-arbitration evidence that Pinto-Walsh sought to admit regarding the value of Bradshaw's contribution.

We therefore find no merit in Pinto-Walsh's conclusory assertion that she was prejudiced by Judge Martin's exclusion of the evidence regarding the value of Bradshaw's contribution.

## IV.  DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondents.

_____

                                        ELIA, J.


WE CONCUR:




_____

PREMO, Acting P. J.




_____

DANNER, J.




H042868
*Burke*, *Williams & Sorenson LLP et al. v. Pinto-Walsh*