Filed 6/11/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA UNION SQUARE L.P., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> SAKS & COMPANY LLC, <br><br>     Defendant and Respondent. | A158015 <br><br> (City & County of San Francisco Super. Ct. No. CPF-17-515528) |

This matter comes to this court after landlord/appellant California Union Square L.P. (Union Square) and tenant/respondent Saks Company L.L.C. (Saks) participated in two arbitration proceedings regarding the rent Saks should pay for a building it leased from Union Square. The trial court vacated the first arbitration award (in favor of Union Square) and confirmed the second arbitration award (in favor of Saks). Union Square contends the trial court erred in vacating the first arbitration award. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Union Square owns a 131,000-square foot building at 384 Post Street in San Francisco (384 Post). In 1991, Saks entered into a lease (Lease) to operate a department store at 384 Post. The Lease provides Saks an initial 25-year lease period followed by five successive options to renew for a period of 10 years each. It requires base rent to be set at " 'Fair Market Rent' . . . [which] mean[s] the open market rental value of [384 Post] for first-class

1

retail use compatible with the then current standard in Union Square taking into account the size of [384 Post]." The Lease further provides that, if the parties are unable to agree to the rent amount, they are to submit the issue to arbitration in accordance with the provisions of section 3.1 of the Lease (Section 3.1).

Section 3.1 sets forth the arbitrator's authority in determining fair market rent: "The arbitrator shall have the right to consult experts and competent authorities with factual information or evidence pertaining to the matter to be determined by them, but any such consultation shall be made in the presence of both parties with full right on their part to cross-examine. . . . The arbitrator shall have no power to modify the provisions of this Lease." Section 3.1 also provides for what is known as " 'baseball ' arbitration," in which each party proposes its own rent determination to the arbitrator and the arbitrator "select[s] which of the two determinations proposed by the parties most closely approximates [the arbitrator's] determination of [rent]. The arbitrator shall have no right to propose a middle ground or any modification of either of the two proposed resolutions."

In January 2016, Saks exercised its option to renew the Lease for 10 years, to commence February 1, 2017. The parties were unable to agree on rent and selected arbitrator Jan Kleczewski to resolve their dispute. The arbitration agreement set forth the arbitration process and scope of Kleczewski's role as arbitrator as follows: "As the neutral arbitrator, the scope of my work will include review [of] the parties['] Opening Briefs and Reply Briefs, inspection of the subject property, inspection of the party experts' lease comparables, conducting the arbitration hearing in accordance

with the Arbitration Process as set forth by the parties, review of the Closing Briefs, and finally ruling on fair market rent."[1]

Thereafter, the parties submitted their opening and reply briefs, accompanied Kleczewski on a site visit to 384 Post, and participated in an arbitration hearing from January 23 to 25, 2017, during which they presented documentary and testimonial evidence and argument and conducted cross-examination in accordance with a streamlined 16-hour process set forth in the arbitration agreement.[2] After the close of evidence, Union Square asked the arbitrator to receive certain evidence and Saks' attorney objected, stating no additional evidence should be allowed because Saks would not have the opportunity to rebut the evidence. The arbitrator

---

[1] While not dispositive, we note the draft arbitration agreement initially circulated by Kleczewski included the following: "The scope of my work also includes performance of due diligence and other analysis as I consider necessary to support my determination." Saks' attorney objected and asked that this sentence be removed to ensure the arbitrator's analysis and decision would be confined to evidence presented by the parties and to ensure the arbitrator's role was consistent with Section 3.1, which provides that any "consultation" of "factual information or evidence" must be made "in the presence of both parties with full right on their part to cross-examine." Counsel for Union Square agreed to remove the language and so informed Kleczewski. Kleczewski deleted this sentence and circulated a revised agreement, which the parties signed.

[2] The agreement was very specific about the arbitration procedure. The parties were to exchange opening briefs within three weeks of appointing the arbitrator, exchange reply briefs containing "no new evidence" one week later, and conduct a site visit of 384 Post within one week thereafter, "accompanied by up to 2 non-lawyer representatives and 1 lawyer representative from each party." Each party had a specified number of hours for testimony, cross-examination, and argument, and 10 business days after the hearing to submit closing briefs; the arbitrator has 15 business days thereafter to issue his award.

agreed with Saks, stating the evidence was closed and no new evidence would be considered.

The parties exchanged their closing briefs on February 8, 2017. Union Square submitted with its closing brief a valuation report from its expert that it had not introduced at the hearing. Saks again objected and Union Square responded that its report did not constitute new evidence because it did not contain new information.

On February 15, Kleczewski sent an email to the parties, stating: "Gentlemen, [¶] I am largely recovered from a flu I came down with on Sunday, which delayed my response to the [parties' correspondence regarding whether Union Square's report constitutes new evidence]. Today I am flying to Los Angeles to look at Beverly Hills properties presented in testimony, and on Thursday [tomorrow] I am taking a trip to Manhattan to look at properties that were discussed in testimony in terms of sales volumes. I will be considering the correspondence during my travels." Union Square's attorney responded, "Thank you Jan. Glad you are recovered. Safe travels." Saks' attorney did not respond.

On February 27, Kleczewski ruled in favor of Union Square on the issue of whether he would receive Union Square's report into evidence. Kleczewski reiterated that "no new evidence should be presented after the close of the arbitration hearing" but stated the report was proper closing argument—and not new evidence—because it was essentially a summary of what had already been presented at the hearing.

Kleczewski issued his award (the Award) on March 2, 2017. He noted that Union Square's rent determination was $13,917,364 and Saks' rent determination was $6,250,000; the midpoint was therefore $10,083,682. Kleczewski's own fair market rent determination was approximately

4

$10.9 million—higher than the parties' midpoint. Thus, pursuant to the principles of "baseball" arbitration, he ruled the annual rent for the new lease term would be $13,917,364.

Kleczewski conducted the following work in reaching his decision: "As the neutral arbitrator, the scope of my work included review of the lease, review of the party's Opening and Reply Briefs, presiding over the three-day arbitration hearing . . . and review of each party's Closing Briefs. I inspected the property with party representatives in attendance on January 5, 2017. I also informally toured the property on multiple other occasions. I inspected the party experts' lease comparables, which included travel to Beverly Hills to inspect the Saks store there. Although no lease comparables were used by either party in New York, [3] [Union Square's] expert introduced data on total annual rent for various store leases on Fifth Avenue. I traveled to Manhattan to look at these, and visited the Saks store on Fifth Avenue as well."

Kleczewski explained how he reached his rent determination, stating, among other things, that 384 Post's multi-level space could be used in manners other than sales space, such as "putting a restaurant on the top floor, as Saks has done on Fifth Avenue [in New York]." He also found higher rent is justified in Union Square because of the marketing value of maintaining a store in a premium location. He used Coach New York as an example, stating: "While the arbitrator fully understands that Fifth Avenue [New York] retail leases are not comparable to Union Square, it is instructive to know that you can find recent retail leases there for spaces much smaller

---

[3]     Saks' expert used Barney's and Old Navy in San Francisco and the Saks store in Beverly Hills as lease comparables; Union Square's expert used Macy's, Apple, Victoria's Secret, and several other San Francisco stores as lease comparables.

than 384 Post that leased for upwards of $20 million a year, such as the new Coach 3-level, approximate 24,000 [square foot] flagship store [in Manhattan] that the arbitrator visited.  While Manhattan tourism is on a much higher magnitude than Union Square, it is unlikely that sales alone support that level of rent."

Union Square filed a motion in the superior court to confirm the Award. Saks filed a motion to vacate the Award on the grounds that Kleczewski: (1) violated the arbitration agreement's limitations on conducting his own due diligence and investigation by visiting certain properties in New York; (2) failed to disclose a conflict of interest that was revealed after the Award was issued; and (3) erred in allowing Union Square to submit a previously undisclosed report after the close of evidence.  Saks argued it had no forewarning Kleczewski would obtain new evidence in New York and rely on that evidence in reaching his decision.

Union Square opposed Saks' motion to vacate the Award and filed a three-page declaration from Kleczewski in support of its position that the Award should be confirmed.  Kleczewski declared as to Saks' conflict of interest claim that he was "unaware of any existing or past relationship with the parties or their affiliates, their counsel or their experts that would preclude [him] from being impartial. . . ."  Kleczewski did not respond to Saks' other two claims—that he should not have visited the New York properties and should not have admitted Union Square's report into evidence. As to the New York trip, Union Square argued Saks was not prejudiced by the trip and that Saks also waived the claim by not objecting when Kleczewski mentioned in his email that he was going to go to New York.

After a hearing on the parties' motions, the trial court issued a written order granting Saks' motion to vacate the Award and denying Union Square's

6

motion to confirm the Award.  The court found it significant that the parties carefully defined the scope of the arbitrator's authority before commencing arbitration and "specifically removed language from a prior draft objectionable to [Saks] which allowed the Arbitrator to perform his own 'due diligence and other analysis.' "  The court found Kleczewski violated that agreement by visiting certain New York properties and also found the visit influenced his decision.  "Specifically, the Award discussed the potential value of alternate uses for the subject property other than retail sales, including 'putting a restaurant on the top floor, as Saks has done on Fifth Avenue [New York].' "  The court noted the Award shows Kleczewski also relied on his inspection of Coach's New York store in reaching a higher rent determination.

The trial court continued:  " 'The scope of arbitration is . . . a matter of agreement between the parties.'  [Citations.]  Here, the parties had taken pains to specifically define what the Arbitrator could, and could not, consider in determining the fair market rent and agreed that the Arbitrator would be limited to inspection of the subject property and the parties' experts' lease comparables."  "Based on the language cited above [which shows the New York visit influenced the Award], along with the fact that [the] arbitrator visited the New York properties, in contravention of the Agreement, the Court has to conclude that the Arbitrator . . . [¶] . . . exceeded the authority given to him by consent of the parties, which warrants vacatur of the Award."  The court vacated the Award and ordered the parties to participate in a second arbitration before a different arbitrator.

7

Union Square filed a petition for a writ of mandate seeking an order from this court directing the trial court to confirm the Award.[4] It argued Saks forfeited its objection to Kleczewski's trip to New York, the trial court should have given more deference to Kleczewski's interpretation of the arbitration agreement that he was allowed to visit the properties in New York, and Saks was not prejudiced by the New York trip. After inviting full briefing, we summarily denied Union Square's petition.

Thereafter, the parties participated in a second arbitration hearing before a different arbitrator who found in favor of Saks (the Second Award). Union Square filed a motion to vacate the Second Award, and Saks moved to confirm the Second Award. After a hearing on the motions, the court denied Union Square's motion to vacate the Second Award, granted Saks' motion to confirm the Second Award, and entered judgment in favor of Saks.

Union Square timely appealed and challenges only the trial court's order vacating Kleczewski's award. (Code Civ. Proc., § 1294.2 [upon an appeal from a judgment confirming an arbitration award, the appellate court "may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the . . . judgment appealed from].") Union Square does not challenge the court's subsequent order confirming the second arbitration award.

## DISCUSSION

Union Square contends the trial court erred in vacating the first arbitration award because: (1) the court failed to "defer to the arbitrator's reasonable reading of the arbitration agreement" that it was within his

---

[4] Because the trial court vacated the Award, there was no judgment from which Union Square could appeal at that time. (Code Civ. Proc., § 1294, subd. (c) [order granting a motion to vacate an arbitration award is not appealable].)

8

authority to visit the New York properties; (2) the New York trip did not prejudicially affect the Award; and (3) Saks forfeited its objection to the New York trip.

**I. Standards**

Arbitration awards are generally subject to narrow judicial review because of the strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (*Moncharsh v. Heily & Blasé* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) Thus, courts will not review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence supporting the arbitrator's award. (*Id.* at p. 11.) Typically, an arbitrator's factual and legal errors are also not reviewable because the arbitrator's (as opposed to the court's) resolution of the disputed issues " ' "is what the parties bargained for in the arbitration agreement." ' [Citation.]" (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184; accord, *Moncharsh*, *supra*, 3 Cal.4th at p. 12.)

There is, however, a statutory safety valve, Code of Civil Procedure section 1286.2[5], which provides that courts "shall vacate" awards that are the product of procedural irregularities. (*Moncharsh*, *supra*, 3 Cal.4th at p. 33; *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 438–439.) "Precisely because arbitrators wield such mighty and largely unchecked power, the Legislature has taken an increasingly more active role in protecting the fairness of the process. [Citation.]" (*Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1165; see also *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 395 (dis. opn. of Werdegar, J.) [finality of arbitration awards is an important principle but "[a]n equally vital principle . . . is that with such limited judicial review the arbitration system

---

[5]    All further statutory references are to the Code of Civil Procedure.

must have . . . sufficient integrity that parties can be confident they will receive a fair hearing and an impartial decision from the arbitrator"].)  To that end, and as relevant in this case, section 1286.2 subdivision (a)(4) provides that a court "shall vacate the [arbitration] award if the court determines . . . [¶] . . . [¶] [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

Arbitrators may exceed their powers when they act in a manner that is not authorized by the arbitration agreement.  (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1055–1056 (*O'Flaherty*); *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375 (*Advanced Micro Devices*).)  In determining whether an arbitrator exceeded his or her powers, we look to the parties' arbitration agreement to see if and how it limited the arbitrator's authority because arbitrators have no powers beyond those conferred upon them by the arbitration agreement; their powers " ' "derive from, and are limited by, the agreement to arbitrate." ' "  (*Greenspan v. LADT LLC* (2010) 185 Cal.App.4th 1413, 1437; *Moncharsh*, *supra*, 3 Cal.4th at p. 8.)

" 'To confirm an arbitration award in excess of the powers granted by an arbitration agreement would destroy the very purpose of arbitration and be contrary to the sound policy of encouraging the settlement of private disputes by the voluntary agreement of the parties.' "  (*Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 532 [vacating arbitration award where agreement did not permit determination by arbitrator of emotional distress claims].)  Where an arbitrator acts "in excess of his [or her] power and jurisdiction, the warnings . . . concerning the limitations on judicial power over arbitration awards are not applicable." (*O'Flaherty*, *supra*, 115 Cal.App.4th at p. 1061.)

10

In *Bonshire v. Thompson* (1997) 52 Cal.App.4th 803, 806, for example, the court vacated an arbitration award because the arbitrator exceeded his powers in considering extrinsic evidence in violation of the parties' agreement that no extrinsic evidence " '*may be introduced in any judicial or arbitration proceeding.*' " Similarly, in *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 952, the court vacated an arbitration award because the arbitrator, in determining whether the grievant-faculty member was properly denied tenure, "failed to adhere to the specific restrictions and limitations imposed on him by the parties and engaged in a decision-making process which exceeded his authority." The court emphasized that the parties had "taken pains to define the issue to be arbitrated" and had agreed to limit the arbitrator's authority. (*Id.* at p. 946.)

We review de novo the question whether the arbitrator "exceeded his powers," but we must give "substantial deference to the arbitrator's own assessment of his contractual authority." (*Advanced Micro Devices, Inc.*, *supra*, 9 Cal.4th at pp. 373, 378.)

## II. Excess of Powers

The Lease placed limitations on Kleczewski's authority. He had no power to modify that or any other term of the Lease and could "consult expert and competent authorities with factual information or evidence" only if he did so "in the presence of both parties with full right on their part to cross-examine." Thus, when Kleczewski proposed in the draft arbitration agreement that he be allowed to "perform[] . . . due diligence and other analysis as I consider necessary to support my determination," the parties removed that term. Counsel for Union Square explained to Kleczewski as follows: "With respect to . . . whether you could consult other experts or competent authorities or your consideration of comparable lease data not

11

provided by the parties, the Landlord would not object to you doing so as long as the parties had the opportunity to confront any such evidence or experts at the hearing, but our understanding is that the Tenant disagrees. To avoid dispute, we have removed that language[.]"

Kleczewski acknowledged he read and reviewed the Lease and agreed to delete the language regarding conducting his own due diligence and analysis. The language was then deleted from the final draft of the arbitration agreement executed by the parties, which reads as follows: "[T]he scope of my work will include review [of] the parties['] Opening Briefs and Reply Briefs, inspection of the subject property, inspection of the party experts' lease comparables, conducting the arbitration hearing in accordance with the Arbitration Process as set forth by the parties, review of the Closing Briefs, and finally ruling on fair market rent." The agreement also included a specific, streamlined arbitration procedure with multiple deadlines, time limitations, and other restrictions for the parties and the arbitrator to follow, one of which was that the parties' reply briefs could not include any new evidence not mentioned in the opening briefs. In other words, the parties took pains to define the narrow scope of the arbitrator's duties, and there should have been no question at any time during the proceedings that Kleczewski's powers were limited to the above tasks, including evaluating only facts and evidence presented to him "in the presence of both parties with full right on their part to cross-examine" and not conducting his own "due diligence and other analysis."

Because the arbitration agreement specifically described the two categories of properties the arbitrator may inspect—(1) "the subject property" and (2) "the party experts' lease comparables"—and there were no properties in New York that fell into either category, the trial court determined

12

Kleczewski violated the arbitration agreement and exceeded his powers by visiting properties outside the scope of his authority as arbitrator. Union Square challenges that determination, arguing that although the arbitration agreement mentioned two categories of properties, it also contained language stating Kleczewski's " 'work will *include*' " "inspection of the subject property [and] the party experts' lease comparables." According to Union Square, the word "include" shows the arbitration agreement simply set forth *some* of Kleczewski's duties and was not all inclusive. In other words, the agreement did not "*bar* [Kleczewski] from taking any other particular steps," including inspecting "properties that were discussed at the hearing and in the parties' briefs. . . ." In making this argument, Union Square emphasizes that courts must give substantial deference to an arbitrator's assessment of the scope his own powers.

Giving Kleczewski the substantial deference that is due, we conclude he did not exceed his powers by visiting New York for the limited purpose of "look[ing] at properties that were discussed in testimony in terms of sales volumes." Even if we may have reached a different conclusion if we were determining the arbitrator's powers in the first instance, "the deference due an [arbitrator] . . . requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of [the arbitrator's] powers. [Citations.]" (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 372.) Here, Kleczewski stated he was going to go to Manhattan to "look at properties that were discussed in testimony in terms of sales volumes." In doing so, he apparently believed this act was authorized by the terms of the arbitration agreement. And, in fact, it appears Union Square did mention several New York properties at the hearing, including Nike, Under Armour, and Coach, to show that companies pay high rent, not because it is justified

13

by high sales volumes, but because of the value of having a presence in a premium location such as Manhattan. Because Union Square discussed these properties at the arbitration hearing, we presume Saks had the opportunity to rebut evidence regarding these properties or cross-examine witnesses who testified regarding these properties. Because Kleczewski's visit to properties "discussed in testimony in terms of sales volumes" was arguably within the scope of his powers as arbitrator, we conclude he did not exceed his powers by visiting those specified properties.

We reach a different conclusion, however, when it comes to Saks's flagship store on Fifth Avenue in New York (Saks New York), which was not "the subject property," was not a party expert's lease comparable, and was not "discussed in testimony in terms of sales volumes." In fact, Saks New York was never even *mentioned* by either party at any time during the entire three-day arbitration hearing. Union Square does not dispute this, and does not cite to anything in the hearing transcript indicating Saks New York was ever discussed "in terms of sales volumes" or mentioned for any other reason.

Union Square argues Kleczewski was nevertheless authorized to inspect Saks New York because Union Square mentioned the store in its closing brief when it stated, " 'Saks itself has already recognized the value of adding a restaurant to its properties, as with its café at its New York flagship.' " However, the parties were in agreement that no new information would be submitted after the close of evidence, and they had carefully limited Kleczewski's authority to reviewing facts or evidence that both parties had the opportunity to rebut/cross-examine. Thus, the fact that Union Square may have, for the first time in its closing brief, included one sentence mentioning Saks New York does not support its position that this act—which appears to have been in violation of the rule against presenting new

14

information after the close of evidence—brought Kleczewski's inspection and analysis of Saks New York within the scope of his authority.

Union Square also asserts Kleczewski was authorized to inspect Saks New York because Union Square submitted "an article discussing Saks New York at length." This assertion is not supported by the record. The portion of the record Union Square cites does not contain any "at length" discussion (or any discussion at all) about Saks New York; instead, it only discusses the importance of a company's "brand" as the reason Saks benefits from having a store in a premier location, and the opinion of an individual that department stores are not "dead" despite what "[p]eople say." We fail to see how any of this information provides support for Union Square's position that an inspection of Saks New York was within the scope of Kleczewski's powers.

Even considering the deference to be given to an arbitrator's determination of his powers, we conclude Kleczewski exceeded the powers granted him by the parties' agreement when he conducted his own investigation and inspection of a property that was not even mentioned at the hearing.

### III. Prejudice

Union Square argues that vacating the Award is still improper because Saks was not prejudiced by Kleczewski's inspection of any of the New York properties, including Saks New York. We disagree. Courts have held an award must be vacated when the arbitrator's act in excess of his powers "potentially affected" the damage award or other aspects of the award. (*O'Flaherty*, *supra*, 115 Cal.App.4th at p. 1064.) Thus, in *O'Flaherty*, the court vacated an arbitration award "[b]ecause [it could not] say what effect [the arbitrator's act in excess of his powers] had on the award." (*Id.* at p. 1063.) Similarly, in *Handy v. First Interstate Bank* (1993) 13 Cal.App.4th

15

917, 928, the court vacated the arbitration award, stating "we cannot say" the award was not affected by the arbitrator's act in excess of his powers.

We conclude Kleczewski's inspection of Saks New York and his evaluation of what Saks did with another one of its own properties, at the very least, "potentially affected" his rent determination. Kleczewski went beyond just looking at properties "that were discussed in testimony in terms of sales volumes" when he inspected Saks New York. Not only did he go beyond looking at properties discussed in testimony, but the Award shows Kleczewski explicitly relied on his inspection of Saks New York in reaching his rent determination, essentially stating that a higher rent amount was justified because Saks New York had placed a restaurant on the top floor of its New York flagship store and could do the same for its San Francisco store.

Union Square points out that other department stores with top-floor restaurants were also mentioned at the hearing and that Kleczewski's inspection of Saks New York therefore made no difference. However, as Union Square suggested when it mentioned Saks New York for the first time in its closing brief, the fact that "Saks itself" placed a restaurant on its own property was potentially strong evidence to support a finding that Saks acknowledged the value of adding a restaurant to it stores and was capable of doing so in San Francisco. This was evidence Saks was entitled to—but was not given the opportunity to—rebut, either by cross-examining witnesses or by providing its own testimony, evidence, argument and/or explanation. This was a fairly close case in which Kleczewski's own rent determination was not hugely above the midpoint of the parties' respective rent determinations. Under the circumstances of this case, we cannot say that Kleczewski's inspection of Saks New York did not impact his decision.

16

Union Square alternatively argues that instead of vacating the Award, we should simply correct it to take out any references to Saks New York (and any other properties Kleczewski should not have visited) and confirm the Award as corrected. Union Square asserts that "[w]here an arbitrator's award includes material beyond the proper scope, a court may simply order it deleted if it would not affect the decision's bottom line." This argument is based on the very questionable premise that Kleczewski's inspection of Saks New York did "not affect the decision's bottom line." Because this is not a case in which we can "correct" the Award simply by deleting references to Saks New York, we decline to correct and confirm the Award. (See *Handy v. First Interstate Bank*, *supra*, 13 Cal.App.4th at p. 928 [court refused to correct and confirm the arbitration award where the arbitrator's error potentially infected the award in a way that the award could not be corrected without affecting the merits of the decision].)

**IV. Waiver/Forfeiture**

Finally, we address Union Square's argument that Saks forfeited its objection to Kleczewski's New York trip by not responding to his email. We reject this argument because Saks could not have known that, in addition to visiting identified properties, Kleczewski was also going to inspect Saks New York and rely on information obtained from that inspection in violation of the arbitration agreement.[6]

---

[6] Although the terms "forfeiture" and "waiver" are often used interchangeably, forfeiture is the failure to make a timely assertion of a right (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521, fn. 3) and is the proper term to use when referring to " 'the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court' " (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912). Waiver, on the other hand, is the intentional relinquishment or abandonment of a known right (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 521, fn. 3) and is often used when the claim involves a statutory or

As noted, Kleczewski stated in his email that he was on his way to Manhattan for the limited purpose of "look[ing] at properties discussed in testimony in terms of sales volumes." He did not say he would be visiting Saks New York or any other properties that were not discussed or even mentioned at the hearing. He did not indicate he would be obtaining new evidence that the parties would not have the opportunity to rebut, or that he would be using that evidence to support his rent determination. It was not until the issuance of the Award that the parties learned he had inspected Saks New York and used information obtained during that inspection to support his decision.

Moreover, regarding the properties Kleczewski *said* he was going to visit, we note Saks Beverly Hills was a lease comparable and that there were several Manhattan properties such as Coach New York that were "discussed in testimony in terms of sales volumes," with each party having the opportunity to present or rebut evidence regarding those properties. Thus, in light of the substantial deference given to arbitrators regarding the scope of their powers, Saks may have reasonably believed that Kleczewski's inspection of Saks Beverly Hills and the Manhattan properties that were discussed at the hearing was encompassed within the scope of his duties as arbitrator, and that any objection to the trip would be futile. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 727 [party will be excused from objecting where objection would be futile].)

---

important right; in such a case, a party will not be found to have waived that right unless it was voluntary, knowing, and done with adequate awareness of the relevant circumstances and likely consequences (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 252). Saks clearly did not "waive" a statutory right, but we conclude that even under the less stringent standards of forfeiture, Saks adequately preserved its claim that Kleczewski exceeded his powers by visiting Saks New York.

18

Union Square suggests that even if Saks could not have known that Kleczewski would be visiting Saks New York, Saks could have "expressed concern" or asked questions about the trip, thereby prompting Kleczewski to either cancel his trip, visit the properties anyway but not "rely on [them] at all in the final award," or "clarified that the purpose of the trip was not to gather forbidden evidence that neither party had discussed. . . ." While, in retrospect, it may have been prudent for *either party* to ask for more details, there was very limited time for them to do so as Kleczewski did not say anything about visiting *any* properties until the day he was already en route to those locations. Moreover, Kleczewski had already specified that his trip was for the limited purpose of visiting one comparable in Beverly Hills and other "properties that were discussed in testimony in terms of sales volumes." Thus, Kleczewski's trip, as represented, appeared to be permissible. Under these circumstances, the failure to "express[] concern" or ask questions did not amount to forfeiture of the right to object to Kleczewski's inspection of Saks New York.

Union Square cites to *J.C. Gury Co. v. Nippon Carbide Indus. (USA) Inc.* (2007) 152 Cal.App.4th 1300, 1304, in which the court found a party waived/forfeited its claim that the arbitrator exceeded his powers. There, Nippon Carbide challenged an arbitration award on the ground the arbitrator exceeded his powers by deciding an issue the parties had agreed the arbitrator would not have the authority to decide. (*Ibid*.) The court, however, noted that during the arbitration proceedings, "both parties unequivocally submitted the issue . . . to arbitration" and Nippon Carbide never objected to the arbitrator deciding the issue. (*Id*. at p. 1306) The court held that "while the arbitration clause limited the scope of the arbitrator's

power, the conduct of the parties at the arbitration proceeding operated to waive that limitation." (*Id.* at p. 1304)

Here, in contrast, the parties were clear from the outset that Kleczewski would not be authorized to perform his own due diligence. Saks objected when Kleczewski proposed that he be allowed to do so, and the objection resulted in a revised arbitration agreement, which Kleczewski agreed to and the parties signed. In addition, counsel for Union Square specifically referenced the section in the Lease that discussed the arbitrator's limited powers, and Kleczewski acknowledged he read and reviewed the Lease. Later, when Union Square asked to present a report to Kleczewski after the close of evidence, Saks objected—and Kleczewski agreed—that no new information would be allowed after the close of evidence. Given the parties' and Kleczewski's repeated acknowledgement of the limits on Kleczewski's powers, Saks' lack of response to Kleczewski's email did not constitute either a waiver or forfeiture of its objection to Kleczewski's inspection of Saks New York and his reliance on information obtained during that inspection.[7]

## DISPOSITION

The trial court's orders vacating the first arbitration award and confirming the second arbitration award are affirmed. Respondent shall recover its costs on appeal.

---

[7] Because we affirm on the ground the arbitrator exceeded his powers, we will not address the other arguments Saks raised below, including the conflict of interest issue the parties discuss in their appellate briefs. Further, we affirm the trial court's order confirming the second arbitration award because, as noted, apart from seeking reversal of the order vacating Kleczewski's award, Union Square identifies no other basis for challenging the validity of the second arbitration award.

20

                                          _____
                                          Petrou, J.


WE CONCUR:


_____
Siggins, P.J.


_____
Fujisaki, J.


*A158015*

21

Trial Court:        San Francisco County Superior Court

Trial Judge:       Hon. Charles F. Haines

Counsel:           Orrick, Herrington & Sutcliffe, Brian P. Goldman, Samuel T. Harbourt, William A. Molinkski, David P. Faud and Benjamin F. Aiken; Moskovitz Appellate Team, Myron Moskovitz and William Stein for Plaintiff and Appellant.

                         Allen Matkins Leck Gamble Mallory & Natisis, Anthony J. Oliva, Marissa M. Dennis, Stacey A. Villagomez and Marshall C. Wallace for Defendant and Respondent.