Filed 5/16/25  SensorMetrix v. Dzine Unlimited CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| SENSORMETRIX, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DZINE UNLIMITED, INC., <br><br> Defendant and Appellant. | D084143 <br><br><br> (Super. Ct. No. 37-2023-00024668-CU-PA-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Decker Law, James Decker, Griffin Schindler and Christopher Jones for Defendant and Appellant.

Amin Wasserman Gurnani and William P. Cole for Plaintiff and Respondent.

SensorMetrix entered into a government contract to make a technology and subcontracted with Dzine Unlimited, Inc. for a portion of the contract. When a dispute arose, Dzine and SensorMetrix submitted it to arbitration under the terms of their subcontract.  The arbitrator found in favor of SensorMetrix, and the superior court confirmed the arbitration award over

Dzine's motion to vacate. On appeal, Dzine contends the court erred in confirming the award because the arbitrator exceeded his powers by basing his decision on an interpretation of the subcontract contrary to its express provisions. We discern no error and accordingly affirm.

I.

A.

SensorMetrix contracted with a branch of the United States military to design and demonstrate a non-contact hit sensor (NCHS) to measure bullet trajectories. SensorMetrix sent Dzine a request for proposal to participate as a subcontractor. The request contemplated three phases of Dzine's work: (a) "an 'alpha' phase, in which Dzine would design and build an NCHS version to permit an initial evaluation and testing; (b) a 'beta' phase, involving a revised design and building of a mechanical version of the NCHS system; and (c) the demonstration phase, in which Dzine would incorporate final design changes and oversee the physical production of the" NCHS systems.

Effective February 2020, SensorMetrix subcontracted with Dzine to perform ten tasks related to these phases. The subcontract was an incrementally funded "Firm Fixed Price Completion subcontract," under which Dzine would receive approximately $285,000 for completing the ten tasks. The agreement expired December 6, 2021.

At the time of execution, roughly $58,000 was funded for three tasks. SensorMetrix was not liable for payments exceeding that amount "unless additional funds are made available and are incorporated as a modification to this subcontract." Dzine, meanwhile, was not obligated to perform services exceeding the price of initial funding "until such time [as] additional contract

2

value and funding is agreed to by the parties for continued performance under this agreement."

The subcontract contained an integration clause providing: "This Agreement and all attached Exhibits contain the entire agreement and understanding between the parties as to its subject matter" and "[a]ny modification to this Agreement shall be in writing, executed by an authorized official of each party."

The subcontract also included a nonwaiver provision, under which "[t]he failure of a party in any instance to insist upon the strict performance of the terms of this Agreement will not be construed to be a waiver or relinquishment of any of the terms of this Agreement, either at the time of the party's failure to insist upon strict performance or at any time in the future, and such terms will continue in full force and effect."

The subcontract further contained an arbitration clause providing that "[a]ny dispute arising under or related to this Agreement shall be resolved in binding arbitration, before a single arbitrator, pursuant to the Commercial Arbitration Rules of the American Arbitration Association." "The decision of the arbitrator resolving the dispute may be entered in any court of competent jurisdiction."

The parties twice modified the subcontract in writing to incrementally increase the funded maximum to roughly $190,000 for additional tasks.

In February 2021, the parties entered into a second and separate subcontract to calibrate the NCHS system.

B.

Dzine performed under the subcontract through the end of 2021. As of November 30, SensorMetrix had paid roughly $247,000 to Dzine. That day,

3

Dzine submitted two invoices taking the total several hundred dollars over the fixed price for the subcontract, yet SensorMetrix paid them in full.

According to Dzine, the "beta" systems failed due to SensorMetrix's design failures. SensorMetrix then requested additional "alpha" and "beta" parts allegedly not included in the subcontract. Dzine explained to SensorMetrix that it thought this request was a "third" project beyond those contemplated by the two subcontracts. After a telephone call, however, Dzine confirmed there were only two agreements between the parties.

Dzine did not complete the work by December 6. In late December 2021 and early January 2022, Dzine sent two invoices to SensorMetrix for roughly $56,000. SensorMetrix did not pay them, instead sending a letter informing Dzine the subcontract was expired and it had defaulted on its contractual obligations to SensorMetrix's detriment.

## C.

Dzine filed a demand for arbitration against SensorMetrix seeking payment of the last two invoices. SensorMetrix counterclaimed for breach of contract. Over six days, the arbitrator took evidence, including the testimony of the parties, and heard argument. None of the proceedings were recorded.

In a 19-page decision, the arbitrator found in favor of SensorMetrix on Dzine's claim. He found credible and truthful the testimony of one of SensorMetrix's principals that he forgot to issue a third modification of the subcontract and concluded "Sensor[M]etrix's willingness to have Dzine continue to work on the NCHS subcontract after completion of [amendments] 1 and 2, served as a replacement for, or a waiver of the requirement for executed subsequent [amendments] called for under that subcontract."

The arbitrator further found Dzine had breached the subcontract in numerous ways. He awarded SensorMetrix roughly $55,000 in damages.

4

D.

SensorMetrix petitioned to confirm the arbitration award in superior court.  Dzine opposed and moved to vacate the award, contending the arbitrator exceeded his powers by admitting and relying on improper extrinsic evidence, "arbitrarily mak[ing] up" an oral contract, "rema[king]" the subcontract "largely based on the improper extrinsic evidence," and admitting and relying on improper hearsay testimony.

In a minute order, the trial court denied the motion to vacate.  The court concluded the arbitrator did not exceed his authority by considering extrinsic evidence, something arbitrators and courts "regularly consider" in construing contracts.  It also found the arbitrator's award was based on the written contracts rather than an oral contract.  The court noted hearsay is allowed in arbitration proceedings.  As the court found no ground to vacate the arbitration award, it confirmed it.

II.

Dzine contends the arbitrator exceeded his powers by using extrinsic evidence not to interpret the subcontract's terms, but instead to waive or modify them in a way that contradicted the express terms of the subcontract. Dzine argues the contract was fully integrated and any modifications were required to be in writing.  Accordingly, the arbitration award must be vacated.  We disagree.

A.

In private arbitration, like here, "the scope of arbitration is a matter of agreement between the parties, and the powers of an arbitrator are limited and circumscribed by the" arbitration agreement.  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8-9 [cleaned up].)  "[U]nless specifically required to act in conformity with rules of law," arbitrators "may base their decision upon

5

broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." (*Id.* at pp. 10-11 [cleaned up].) Thus, "it is the general rule that [t]he merits of the controversy between the parties are not subject to judicial review," and "courts will not review the validity of the arbitrator's reasoning." (*Id.* at p. 11 [cleaned up].) "In other words, it is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators . . . are fallible." (*Id.* at p. 12 [cleaned up].)

"Any party to an arbitration in which an award has been made may petition the court to confirm, correct[,] or vacate the award." (Code Civ. Proc., § 1285.) "[T]he court shall confirm the award as made" unless, as relevant here, it vacates the award because "[t]he arbitrator[ ] exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§§ 1286, 1286.2, subd. (a)(4).)

We review de novo the superior court's order on whether the arbitrator exceeded their authority, but not the arbitrator's award itself. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.) Public policy strongly favors arbitration as a means to expeditiously and finally resolve disputes and avoid the courts, so courts "indulge every intendment to give effect to such proceedings." (*Moncharsh,* 3 Cal.4th at p. 9 [cleaned up].) Accordingly, "arbitration awards are generally subject to extremely narrow judicial review. Courts will not review the merits of the controversy, the validity of the arbitrator's reasoning[,] or the sufficiency of the evidence supporting the arbitrator's award." (*Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 887.)

6

B.

Bearing these principles in mind, on this record we conclude the trial court correctly determined the arbitrator did not exceed his powers.

No one disputes the subcontract is fully integrated and contains a nonwaiver provision. Contrary to Dzine's argument, however, these provisions do not expressly constrain the arbitrator's right to rely on extrinsic evidence. (Cf. *Bonshire v. Thompson* (1997) 52 Cal.App.4th 803, 806, 810, 811 [arbitrator who "must have relied on extrinsic evidence" exceeded powers because integration clause provided "'*no extrinsic evidence whatsoever may be introduced in any . . . arbitral proceeding . . . involving this agreement*'"].) Rather, the integration clause here contains standard language that cannot be fairly read to prohibit the arbitrator from considering extrinsic evidence. (See, e.g., Ennico, Closely Held Corporations: Forms and Checklists (Mar. 2025 update), ch. 9, § 9:17 [form independent contractor agreement containing identical integration clause].)

Dzine claims that, even if the arbitrator had the power to consider extrinsic evidence, he could only do so to *interpret* the contract; yet here the arbitrator used it to *modify* the subcontract's terms, as the evidence "did not *supplement* the integrated Subcontract; it *contradicted* it." According to Dzine, the arbitrator's decision cannot reasonably be construed as an interpretation because the integration clause cannot reasonably be interpreted to permit oral modifications to the contract.

This argument presupposes and depends on there being an oral modification to the contract that violated the nonwaiver provision. Even assuming waiver is how the arbitrator arrived at his decision, however, we do not review "the validity of the arbitrator's reasoning." (*Hoso Foods, Inc.*, 190 Cal.App.4th at p. 887.) On this record, the arbitrator's decision could

7

reasonably be viewed as an interpretation rather than a modification of the subcontract.

The subcontract itself—not extrinsic evidence—sets out the maximum fixed price as well as the entirety of the tasks to be completed by Dzine. Dzine was not obligated to provide services exceeding the initial funding until further "funding is agreed to by the parties for continued performance under this agreement." Under the subcontract, Dzine's claims shall not "exceed the total [initial] contract value" of roughly $58,000 "unless the parties mutually agree to an increase to the contract value for additional scope herein." Both clauses refer to mutual *agreement* but do not require formal *modification* of the subcontract. The drafters knew how to require modification—which would have to be written—had they wanted to; for example, SensorMetrix could not be held liable for more than the funded amount "unless additional funds are made available *and are incorporated as a modification to this subcontract*." (Italics added.)

The arbitrator could reasonably construe these provisions as allowing the parties to continue to work toward more milestones in exchange for additional funding without formally modifying the agreement. Such an interpretation would not add an oral third amendment to the subcontract, but rather harmonize its terms and the parties' course of conduct. And such an interpretation would not necessarily contradict the integration and nonwaiver clauses.

In sum, the arbitrator did not exceed his powers. The arbitrator decided the dispute before him—Dzine's claim to a right to payment and SensorMetrix's breach of contract counterclaim—and not any matter the parties never submitted to arbitration. (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1055.) The arbitrator did not necessarily "remake[ ]"

8

the subcontract, much less arbitrarily so. (*Id.* at pp. 1055-1056.) No one asserts the arbitrator lacked subject matter jurisdiction, the subcontract was illegal, or that the award violates public policy or any party's statutory rights. (*Id.* at p. 1056.) The remedy is rationally related to the contract as reasonably interpreted and the issues before the arbitrator. (*Ibid.*) To the extent the arbitrator may have considered equitable principles in addition to the subcontract's express terms in interpreting the instrument and fashioning an appropriate remedy, an arbitrator is entitled to do so. (See *Moncharsh*, 3 Cal.4th at pp. 8-9.) Thus, the trial court appropriately confirmed the arbitration award.

Given our determination, we need not address the remainder of the parties' arguments, such as whether the nonwaiver provision was waivable or whether waiver is a question of fact.

III.

We affirm. SensorMetrix is entitled to its costs on appeal.

CASTILLO, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.

9