Filed 11/12/25  Bols v. Levine CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| BOLS, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SIDNEY H. LEVINE as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | D084595<br><br><br>(Super. Ct. No. 37-2022-00031933-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Matthew C. Braner, Judge.  Affirmed.

Friedhofer and James E. Friedhofer; Knottnerus & Associates, Wilfred Knottnerus and Mark B. Simpkins for Plaintiff and Appellant.

Law Office of Michael L. Levine and Michael L. Levine for Defendants and Respondents.

Bols, LLC ("Bols") appeals from a judgment confirming an arbitration award in favor of Sidney H. and Judith A. Levine ("the Levines").  Bols contends we must reverse the judgment and direct the superior court to vacate the award on the ground the arbitrator exceeded his powers and

prejudicially refused to hear material evidence by (1) not allowing service of any deposition subpoena on a nonparty; and (2) not issuing blank hearing subpoenas. It additionally alleges the trial court erred in imposing alter ego liability on Bols' owner, Ponani Sukumar. We conclude the arbitrator did not exceed his power or refuse to hear material evidence, and substantial evidence supports the trial court's alter ego findings. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2022, the Levines contracted to sell their home to Bols for $13 million through a Residential Purchase Agreement ("Agreement"). The Agreement contained a binding arbitration clause. To purchase the home, Sukumar created and capitalized Bols with $100. Sukumar timely made the $390,000 deposit from one of his 40 bank accounts and began conducting inspections of the property.

Escrow did not close, and Bols demanded the parties participate in mediation. In response, the Levines served Bols with a Notice to Buyer to perform by timely removing contingencies as required in the Agreement. The next day, Bols filed a complaint in the San Diego Superior Court alleging breach of contract and seeking specific performance. Shortly thereafter, the Levines served Bols with a notice of cancellation of contract, disposition of deposit, and cancellation of escrow. Bols then filed a lis pendens on the Levine property. After mediating their dispute without success, the Levines presented a demand for arbitration to cancel the Agreement and escrow.

In June 2023, Bols requested the arbitrator to issue two subpoenas to take the depositions of two third-party witnesses. The arbitrator issued the subpoenas. The Levines moved to quash the subpoenas arguing Bols was not permitted to conduct third-party depositions in the arbitration. They

2

requested that Bols be sanctioned. The arbitrator quashed the subpoenas as unauthorized discovery. In doing so, the arbitrator noted the time periods were overbroad; the requested documents were not reasonably and particularly described; and requests for "all financial records," "all correspondence," or "all documents relating to liability" were objectionable because these requests were inadequate and included too many subcategories. The arbitrator awarded monetary sanctions in the amount of $7,922.50 against Bols. Bols moved for reconsideration, but the arbitrator affirmed the order. After the arbitrator's order, the Levines voluntarily produced the two witnesses. Bols' attorney deposed both witnesses before the arbitration hearing.

In August, Bols requested two blank subpoenas from the arbitrator. One subpoena asked for a witness to appear. The other subpoena sought both an appearance and the production of documents. The arbitrator issued the blank subpoena for witness appearance. The arbitrator declined to issue the subpoena for appearance and production of documents in blank and requested the list of exhibits that Bols sought. Bols' counsel then completed and submitted the subpoena as instructed, and the arbitrator signed and issued it.

Arbitration took place in September, and on November 1, the arbitrator issued its final award finding "[t]he Levines established by a preponderance of the evidence that they performed under the terms of the [Agreement]." The arbitrator concluded the Levines were entitled to cancellation of the Agreement and escrow and awarded them attorney fees and costs. In the final ruling, the arbitrator noted that determining whether Sukumar was the alter ego of Bols was a matter for the superior court.

3

The Levines then moved in superior court to confirm the arbitration award, expunge the lis pendens, and add Sukumar as an alter ego judgment debtor. Bols filed a motion to vacate the final award, alleging the arbitrator exceeded his powers by not allowing third-party subpoenas and refusing to issue blank subpoenas. The superior court granted the Levines' motions, denied Bols' motion to vacate, and awarded the Levines additional fees and costs.

DISCUSSION

On appeal, Bols maintains the arbitrator's award should be vacated based upon two of the grounds Code of Civil Procedure[1] section 1286.2 provides for vacating an arbitration award: (1) the "arbitrator[ ] exceeded [his] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" and (2) the "rights of the party were substantially prejudiced . . . by the refusal of the arbitrator[ ] to hear evidence material to the controversy." (*Id.,* subds. (a)(4) & (5).) Bols further contends the trial court erred in finding Sukumar to be the alter ego of Bols and by adding him as a judgment debtor. We are not persuaded by Bols' arguments.

A.    *The Arbitrator Did Not Exceed His Authority or Prejudicially Refuse to Hear Material Evidence*

Bols seeks reversal of the arbitration award based on section 1286.2. Bols contends the arbitrator exceeded his authority and refused to hear material evidence when he: (1) prohibited Bols from taking third-party depositions; and (2) refused to issue Bols blank subpoenas to compel third-

---

1    Further statutory references are to the Code of Civil Procedure unless otherwise stated.

4

party witnesses to appear and produce documents at the arbitration hearing. We disagree.

1. *Legal Principles*

Whether an arbitrator exceeded authority is a question of law we review de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9; *Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 888.) In so doing, "we may not review the validity of the arbitrator's reasoning, the sufficiency of the evidence supporting the award, or any errors of fact or law that may be included in the award." (*Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1313, citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).)

California favors finality in arbitration proceedings for public policy reasons. (*Moncharsh, supra*, 3 Cal.4th at pp. 1, 9.) Arbitration offers " 'a speedy and relatively inexpensive means of dispute resolution.' " (*Ibid.*) "Ensuring arbitral finality thus requires that judicial intervention in the arbitration process be minimized." (*Id.* at p. 10.) "[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id.* at p. 11.) This rule of limited judicial review applies to discovery orders in arbitration. (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1090 (*Alexander*).) Thus, even " 'an error of law apparent on the face of the [discovery order] that causes substantial injustice does not provide grounds for judicial review.' " (*Id.* at p. 1091.)

Courts have justified limited review of arbitration awards on two bases. (*Moncharsh, supra*, 3 Cal.4th at p. 11.) "First, by voluntarily submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Ibid.*) Second, any

5

such risk is reduced because the law provides for "judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Id.* at p. 12.)

Section 1286.2, subdivision (a) sets forth the exclusive grounds for vacating an arbitration award as "an exception to the general rule precluding judicial review." (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1196.) When section 1286.2 grounds apply, the court must vacate an arbitration award. These grounds include when "the court determines . . . [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (*Id.*, subd. (a)(4).) Additionally, when "rights of the party were substantially prejudiced by the refusal of the arbitrators to . . . hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title," vacating the award is warranted. (*Id.,* subd. (a)(5); 9 U.S.C. § 10, subd. (a)(4).)

Subdivision (a)(4) of section 1286.2 "does not supply the court with a broad warrant to vacate awards the court disagrees with or believes are erroneous." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 (*Gueyffier*).) " 'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.' " (*Id.* at p. 1185.) "An arbitrator exceeds his [or her] powers where he [or she] acts without statutory or contractual authority." (*Hoso Foods, Inc. v. Columbus Club, Inc.*, *supra*, 190 Cal.App.4th at p. 890.) However, "[a]n arbitrator ordinarily has broad discretion with respect to the procedures and law governing the arbitration." (*Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 177.)

Likewise, vacating an award for " 'refusal . . . to hear evidence material to the controversy' (§ 1286.2, subd. (a)(5)) must rest on more than a simple

6

error in applying the rules of evidence." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368 (*Heimlich*).) Section 1286.2, subdivision (a)(5) is not " 'a back door to *Moncharsh* through which parties may routinely test the validity of legal theories of arbitrators.' " (*Heimlich,* at p. 368.) "Instead, it was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' " (*Ibid.*) "It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue." (*Ibid.*)

      2.    *The Arbitrator Did Not Exceed His Power Under Section 1283.05*

The parties signed the Agreement, which provided for binding arbitration in which discovery would be conducted in accordance with section 1283.05. Bols contends the arbitrator exceeded his power because section 1283.05 does not provide for the "wholesale prohibition of depositions."

Section 1283.05, subdivision (a) states, "the parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration . . . ." However, subdivisions (b) and (c) explain the arbitrator has broad authority, including the "power . . . to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery" and the ability to "consider, determine, and make such orders imposing such terms, conditions, consequences, liabilities, sanctions, and penalties, whenever necessary or appropriate at any time or stage in the course of the arbitration, and such orders shall be as conclusive, final, and enforceable as an arbitration award on the merits." (*Id.*, subds. (b), (c).) These provisions give the arbitrator broad power to enforce the rights and obligations of discovery and make necessary and appropriate discovery orders. (*Alexander, supra*, 88 Cal.App.4th at p. 1088 ["[S]ections 1283.1 and

7

1283.05 grant arbitrators broad authority to order discovery in certain types of arbitration proceedings."].)  Here, the arbitrator did not exceed his powers. Right or wrong, the arbitrator's denial of Bols' request to take third-party depositions, after the Levines voluntarily agreed to produce the witnesses, was well within his authority.

"A different conclusion would unduly extend the scope of judicial review of arbitration proceedings."  (*Alexander*, *supra*, 88 Cal.App.4th at p. 1090.) "The Legislature has specified [in section 1283.05, subdivision (c)] that arbitrators' discovery orders 'shall be as conclusive, final, and enforceable as an arbitration award on the merits.' "  (*Ibid*.)  "This means that, as with other arbitration orders, even 'an error of law apparent on the face of the [discovery] order that causes substantial injustice does not provide grounds for judicial review.' "  (*Ibid*.)

3.      *The Arbitrator Did Not Exceed His Powers Under Section 1282.6*

Similarly, the arbitrator's decision to refuse to issue blank subpoenas did not exceed the arbitrator's authority under section 1282.6, as Bols contends.  Section 1282.6, subdivision (b) provides in relevant part: "Subpoenas shall be issued, as of course, signed but otherwise in blank, to the party requesting them, *by a neutral association*, organization, governmental agency, or office *if the arbitration agreement provides for administration of the proceedings by*, or under the rules of, *a neutral* association, organization, governmental agency or office, *or by the neutral arbitrator*."  (Italics added.)

The most natural reading of this provision is that (1) blank subpoenas must be issued *by the neutral association* or other entity *if* the arbitration agreement provides for arbitration by or under the rules of the neutral association or other entity; or alternatively (2) blank subpoenas must be issued *by the neutral arbitrator* if the arbitration agreement does *not* provide

8

for arbitration by or under the rules of a neutral association or other entity. In this case, the arbitration agreement provided for arbitration by JAMS and the arbitration proceeding was conducted by a JAMS arbitrator. To invoke this provision, therefore, the request for blank subpoenas should have been directed to JAMS, not the arbitrator. The whole point is to give litigants a way to obtain subpoenas "*without involving the arbitrator in the process*." (*Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 400, italics added; see also *id*. at p. 402 ["the 1982 amendment provided a mechanism for the parties to obtain and serve subpoenas without the arbitrators' involvement"].)

In any event, even assuming that the arbitrator himself should have issued blank subpoenas, any error in failing to do so still would not fall within the narrow statutory provision for acts in excess of the arbitrator's powers. (§ 1286.2, subd. (a)(4); see *Monoshov v. Walsh* (2000) 22 Cal.4th 771, 773 [provision is a "narrow" one].) As noted, the arbitration agreement incorporated section 1283.05, which gave the arbitrator broad authority to make " 'conclusive, final, and enforceable' " discovery orders. (*Alexander*, *supra*, 88 Cal.App.4th at pp. 1090–1091.) An arbitrator's decision on such a discovery issue falls within "the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh*, *supra*, 3 Cal.4th at p. 11; see *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 164 [court could not review merits of arbitrator's ruling on discovery matter]; *Alexander*, at p. 1089 [arbitrator does not exceed powers by ruling on discovery matter within scope of arbitration even if ruling is erroneous].) Thus, the arbitrator's decision not to issue blank subpoenas did not exceed his powers even if erroneous. "Courts have repeatedly instructed litigants that challenges to the arbitrator's rulings

on discovery, admission of evidence, reasoning, and conduct of the proceedings do not lie." (*Evans*, at p. 167.)

4. *The Arbitrator's Discovery Rulings Did Not Constitute a Substantially Prejudicial Refusal to Hear Material Evidence*

Bols also contends the arbitrator's award should be vacated because it was substantially prejudiced by the arbitrator's refusal to hear evidence material to the controversy pursuant to section 1286.2, subdivision (a)(5). Bols argues it was substantially prejudiced by the arbitrator's denial of its requests for third-party depositions and blank subpoenas. We disagree.

Even assuming any discovery error, the arbitrator granted much of what Bols requested. Specifically, Bols deposed the two-third party witnesses the Levines produced. Also, the arbitrator issued the two filled-out subpoenas Bols ultimately requested.

Bols argues it was nonetheless prejudiced because it did not have enough time to serve one of the subpoenas. Bols argues that the witness refused to appear and provide documents at the September 5 hearing, and because Bols was unable to timely serve the subpoena, it was prejudiced. This argument rings hollow. The arbitrator issued the requested subpoenas on August 23, 2023, about two weeks before the hearing began on September 5, 2023. The hearing continued for another two weeks through September 19. Bols offers no argument or justification for why that was insufficient time to serve the subpoena, nor is there any indication that Bols requested a continuance to serve the subpoena on this witness and secure her attendance. It is also speculative what the witness would have testified to if called at the arbitration hearing or what the documents would have shown. In these circumstances, the record before us does not support a finding that

10

Bols was "prevented . . . from fairly presenting its case." (*Heimlich*, *supra*, 7 Cal.5th at p. 368.)

We conclude Bols failed to meet its burden of establishing it was "substantially prejudiced" by any discovery error. (§ 1286.2, subd. (a)(5).)

B.  *Substantial Evidence Supports the Alter Ego Liability Finding*

Bols contends the trial court erred in finding Sukumar was its alter ego and adding him as a judgment debtor because substantial evidence does not support that finding. We disagree.[2]

1.  *Legal Principles*

A determination of whether alter ego liability should be imposed "is primarily one for the trial court and is not a question of law; and . . . the conclusion of the trier of fact will not be disturbed if it [is] supported by substantial evidence." (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 837 (*Associated Vendors*).)

A corporation is generally treated as a legal entity separate and distinct from its shareholders, officers, and directors, with separate and distinct liabilities and obligations. (*Sonora Diamond Corp. v. Superior Court*

---

[2]  Sukumar himself has not appealed from the alter ego ruling. After briefing, we issued an order requesting supplemental briefs on Bols's standing to challenge the order imposing alter ego liability against Sukumar. In response, Bols contends it was aggrieved by the alter ego order because the trial court's award of fees against it includes fees incurred by the Levines in successfully litigating the alter ego motion. According to Bols, this portion of the fees award against it could not be sustained if the alter ego ruling were reversed. We note that Bols did argue in the opening brief that a reversal of the trial court's orders would also require reversal of the fees award. We conclude that Bols was aggrieved by the award of fees against it for litigating the alter ego motion and therefore has standing to challenge the underlying alter ego ruling on appeal.

In light of our resolution of the standing issue, Bol's motion to augment the record with minute order of January 31, 2025 is denied.

11

(2000) 83 Cal.App.4th 523, 538 (*Sonora Diamond*).)  The same is true of an LLC and its members and managers.  (*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 220 (*Curci Investments*).)  In certain circumstances, however, the court will disregard the corporate entity and instead regard the corporation or LLC as the alter ego of its shareholders.  (*Sonora Diamond*, at p. 538.)  " 'As the separate personality of the corporation [or LLC] is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.  When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation.' "  (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*); see also *Curci Investments*, at p. 221.)  The alter ego doctrine thus "prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds."  (*Sonora Diamond*, at p. 538.)

The conditions under which the corporate entity may be regarded as an alter ego of another entity or its members vary with the facts of each case.  (*Mesler, supra*, 39 Cal.3d at p. 300.)  " '[T]he doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court.' "  (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811 (*Zoran*).)  There are, however, two general requirements.  First, there must be such unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the individual do not in reality exist.  (*Mesler*, at p. 300.)  Second, it must be true that if the

acts in question are treated as those of the corporation alone, an inequitable result will follow. (*Ibid.*)

Factors to consider in determining whether to apply the doctrine include the commingling of funds and assets, the treatment by an individual of the assets of the corporation as their own, failure to maintain adequate corporate records, identical equitable ownership in the two entities, use of the same offices, employment of the same employees and/or attorneys, the failure to adequately capitalize the corporation or absence of corporate assets, disregard of corporate formalities, identical directors and officers, the diversion or manipulation of assets to the detriment of creditors, and the use of the corporation as a mere shell or conduit for the business of the individual or other entity. (*Zoran, supra*, 185 Cal.App.4th at pp. 811–812; see also *Associated Vendors, supra*, 210 Cal.App.2d at p. 842; *Sonora Diamond, supra*, 83 Cal.App.4th at pp. 538–539.) "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." (*Sonora Diamond*, at p. 539.) Imposing alter ego liability is an extreme remedy that should be sparingly used. (*Ibid.*)

2.    *Substantial Evidence Supports Finding Sukumar is the Alter Ego of Bols*

Here, the presence of multiple of the *Associated Vendor* factors constitutes substantial evidence supporting the trial court's conclusion that Sukumar was the alter ego of Bols and supports its decision to add him as a judgment debtor. Notably, Bols was undercapitalized at creation and lacked assets. (*Associated Vendors, supra*, 210 Cal.App.2d at p. 839 [failure to adequately capitalize].) Sukumar stated he formed Bols, LLC to purchase the property and capitalized it with $100. Despite his assertion that Bols was a separate entity, Sukumar stated the reason he created Bols was to

13

shield himself from personal liability. (*Ibid.* [use of a corporation as a mere shell].) As the sole owner of Bols, Sukumar comingled corporate and personal funds, treating assets of the corporation as his own. Sukumar testified he could not remember which of his 40 bank accounts he used to pay the $390,000 escrow deposit and that he would have to transfer the remaining balance of $12.6 million from one of his accounts to Bols. He explained he had the assets to purchase the property but had "to know [he] was going to buy the property before [he] shifted the assets to Bols." (*Id.* at p. 838 [comingling of funds].) He further explained that after remodeling, he intended to occupy the home as his primary residence. (*Ibid.* [treatment by an individual of the assets of the corporation as his own].)

Moreover, Sukumar and Bols were represented by the same attorney. (*Associated Vendors, supra*, 210 Cal.App.2d at p. 839 [employment of the same attorney].) Since 2013, attorney Sandra Stradling represented Sukumar in over 100 real estate transactions. During arbitration, Stradling represented Bols. She testified Sukumar's process was to form and capitalize an LLC which would then make offers on properties. Stradling's role was to form the LLC, prepare the purchase agreement, and draft the addendum incorporated into the agreements.

There was also substantial evidence presented to support the trial court's finding that the imposition of alter ego liability was required to " 'reach an equitable result.' " (*Mesler, supra*, 39 Cal.3d at p. 301 ["The essence of the alter ego doctrine is that justice be done."].) Specifically, Sukumar stated he sought to avoid personal liability by using Bols and it is unclear whether Bols ever had the funds to satisfy the Levines' arbitration award. (*Relentless Air Racing, LLC. v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 817 [inability to collect judgment was an

14

inequitable result].)  Given the unity of interest and ownership between Bols and Sukumar, it would be unjust to limit liability solely to Bols.

Based on our review of the undisputed facts, we conclude that substantial evidence supports the trial court's finding that Sukumar is the alter ego of Bols and is therefore liable as a judgment debtor.

## DISPOSITION

The order is affirmed.  The Levines are awarded their costs on appeal.


BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

15